9 Mich. App. 262 (1967)
156 N.W.2d 594
In re GRAY ESTATE.
GLOBENSKY
v.
ST. JOSEPH-BENTON HARBOR MEMORIAL HOSPITAL.
Docket No. 2,666.
Michigan Court of Appeals.
Decided December 8, 1967.
Goodenough & Smith, for trustee.
A.G. Preston, Jr., for contestant.
HOLBROOK, P.J.
Trustee under the last will and testament of Luman H. Gray, deceased, presented petition to the probate court for Berrien county for construction of will and allowance of her amended eighth annual account. The trustee also sought the reallocation of receipts and disbursements to income and principal by revising the inventory of assets in the trust as of July 1, 1962, showing receipts and disbursements for the first 7 annual accounts on an income and principal basis resulting in a claimed additional income and corresponding loss to principal.
Contestant-appellee, St. Joseph-Benton Harbor Memorial Hospital filed objections to the allowance of the said amended eighth annual account and the petition.
After a hearing the Honorable Julian E. Hughes, probate judge, rendered a written opinion and signed an order in accord therewith filed December 31, 1964, which stated in part as follows:
"It is hereby ordered, that the eighth annual account as amended be allowed except as follows: * * *
*265 "2. The principal account is not to reflect any adjustments resulting from retrospective allocation of income and disbursements prior to July 1, 1962."
Petitioner thereupon appealed to this Court, In re Gray Estate (1965), 1 Mich App 331. We determined therein that this Court did not at the time have jurisdiction to hear the appeal and certified the proceedings back to the probate court. Petitioner then filed a claim of appeal to the Berrien county circuit court. Contestant filed a cross-appeal objecting to that part of the probate court order allowing petitioner's amended eighth annual account covering the period from July 1, 1962, to July 1, 1963.
After a hearing, the Honorable Karl F. Zick, circuit judge, rendered a written opinion and entered an order affirming the probate court's findings and order.
Petitioner has taken this appeal and raises for review the question: Can a trustee's amended eighth annual account revise the beginning inventory of assets so as to reallocate receipts and disbursements between income and principal for the first 7 annual accounts previously duly allowed by the probate court?
The pertinent facts necessary to a decision appear to be as follows: The will of Luman H. Gray established 2 trusts. Trust "A" with the net income derived therefrom to be paid to the deceased's widow and the remainder to be paid to the designate of the widow by power of appointment. Trust "B" with the net income therefrom to be paid to the testator's father and upon his death to testator's widow for her lifetime with the residue to the remainderman, St. Joseph-Benton Harbor Memorial Hospital. The corpus of trust "A" is to become a part of trust *266 "B" if the widow fails to exercise her power of appointment. The widow has received all the trust income from both trusts "A" and "B" since October 1, 1961, by reason of the death of testator's father.
The testator's will provides in part as follows:
"I hereby empower my said trustees to demand, receive and compromise any right of action or right to realty or personalty by this will transferred; to subdivide, option, sell, exchange, rent, lease, partition, mortgage, pledge, the whole or any part of the real, mixed or personal estate in said trust; to remodel, repair or demolish * * * buildings on said real estate or any portion thereof."
The major asset of the estate was the Gray building property in the city of Benton Harbor. It was valued in the final account of the estate dated March 1, 1955, and in the first annual trust accounting at $360,290, less a mortgage of $25,250 outstanding, dated October 29, 1948, payable $750 quarterly plus interest at 4%. Cash was listed in the final account in the amount of $23,002.17 which was distributed to the income beneficiary of trust "A" in the amount of $9,356.13 and to the income beneficiary of trust "B" in the amount of $10,692.72. The trustees borrowed by mortgage dated August 5, 1955, on the Gray building property, a total of $55,200 to pay off the balance of $23,763.21 on the old mortgage and to purchase a 5% legacy in the estate owned by appellant Virginia H. Globensky, one of the trustees.
Appellant claims that she should be allowed by her amended eighth annual account to revise the trustees' first 7 annual accounts so as to charge the remaindermen of the trust with additional charges by allocating certain expenses to principal formerly charged to income. This would require the remaindermen to be charged with principal payments on *267 the mortgages and one-half of the trustees' and attorneys' fees. A schedule in the footnote[1] discloses *268 pertinent facts concerning the first 7 annual accounts.
In the sixth annual accounting period, the trustees again mortgaged the Gray building property for $50,000, to pay the balance of $38,013.35 on the previous mortgage with the remainder being used for capital improvements.
On April 17, 1962, the trustees mortgaged the Gray building property for an additional $120,000, to make major capital improvements to the building.
The gross income from the Gray building for the second annual period was $50,568.29 with a net of $25,830.11, which compares with the seventh annual period of income from Gray building of $37,595.54 with a net of $10,336.11. Taxes on the Gray building property for the second annual period were $5,469.69, and for the seventh annual period were $9,151.08. Other costs reflected similar increases. This indicated a definite deterioration in the net income during the most recent years.
On November 4, 1963, appellant as sole trustee filed an eighth annual account for the period of July 1, 1962, to July 1, 1963. Notice was given in the proper manner, but the hearing on the account was never held for the reason that on December 2, 1963, testator's widow, Mary Louise Gray Howard objected to the allowance of the account.
On September 4, 1964, appellant filed her amended eighth annual account and a petition to construe deceased's will so as to require accountings to be reported on income and principal account basis. On October 23, 1964, the probate court accepted the resignation of Virginia H. Globensky as sole trustee and, with consent of counsel, appointed Robert A. Whitney and Clinton H. Maki who are presently serving as successor trustees.
The eighth annual account discloses a gross income from the Gray building of $37,137.96 with a *269 net of $9,101.25. This account also discloses that a capital asset, i.e., 43 shares of P & G, Inc., stock valued in the trust estate up to that time at $247,567.77 was declared worthless, and deleted from the inventory.
The first 7 annual accounts for the years commencing in 1955 to July 1, 1962, were each properly noticed for hearing and allowed by the probate court. There were no objections to these accounts and no appeals taken from the orders allowing them. The net income was annually distributed to the widow and father of the testator as reported in these accounts wherein income and disbursements were reported on a cash basis and allocated to income. For the last 3 annual periods both income trust beneficiaries signed receipts in the following form:
"Received of Luman H. Gray Trusts the sum of $____ in full from my distributive share of trusts (A or B) for the period from July 1, ____, to July 1, ____."
These receipts were filed with the annual accounts.
The appellant contends that a construction of the will of the testator creating the trusts involved required annual accounts to reflect allocation of receipts and disbursements to income and principal accounts. The will provided in part as follows:
"I hereby empower my said trustees * * * to determine the division and divide trust funds and to allocate receipts and expenditures between income and principal accounts; * * * to pay all necessary expenses, including the trustees' compensation, appertaining to the execution of this trust; * * * to exercise all other acts necessary for the accomplishment of the purposes of this trust and needed to perform the duties of trustees." (Emphasis supplied.)
*270 This clause containing reference to the power of the trustees to "allocate receipts and expenditures between income and principal accounts" is an integral part of the discretionary powers granted to the trustees, i.e., "to determine the division and divide trust funds" and therefore we construe such powers to be permissive and not mandatory. The trustees could have requested direction from the court in carrying out their duties including that of making accountings or they could have exercised their own judgment, subject however to the requirement that such action be fair, reasonable, and equitable to the rights of those entitled to income and those entitled to principal.
As to the construction of the will, the probate and circuit courts properly denied reopening of the first 7 annual accounts for the purpose of reallocating of receipts and disbursements.
Appellee St. Joseph-Benton Harbor Memorial Hospital maintains that the allowance of the first 7 annual accounts by the probate court after proper notice to all concerned as provided by statute forbids the reopening of the accounts because such orders are res judicata.
Annual accounts are required to be filed by all fiduciaries in the probate court as provided in CL 1948, § 704.38 (Stat Ann 1962 Rev § 27.3178[289]).
CL 1948, § 704.39 (Stat Ann 1962 Rev § 27.3178 [290]) provides as follows:
"Upon the filing of any accounting, the matter shall be set for hearing and notice thereof given in the manner provided by sections 32 to 35 of chapter 1 of this act, and thereupon the court shall proceed to settlement thereof: * * * The order of the probate court allowing any account of a fiduciary shall, subject to the right of appeal, and except in case of fraudulent concealment or fraudulent misrepresentation *271 on the part of the fiduciary be final and conclusive against all persons in any way interested therein who are legally competent at the date of such order."
Appellant admits that proper notice was given to all interested persons on each of the first 7 annual accounts prior to hearing and approval, and that no appeals were taken from the final orders allowing said accounts. Appellant trustee does not assert any fraudulent concealment or fraudulent misrepresentation by anyone. In the case of Raseman v. Raseman (1926), 234 Mich 237, our Supreme Court ruled that allowance of annual accounts of testamentary trustees after notice and without appeal are final and binding on all parties in interest, except for fraudulent concealment or misrepresentation. See, also, In re Peck's Estate (1948), 323 Mich 11; Thaw v. Detroit Trust Co. (1943), 307 Mich 6.
The case of Grigg v. Hanna (1938), 283 Mich 443, is authority for the rule that an order of the probate court allowing an account of an executor or administrator is an adjudication and the general rules of res judicata are applicable.
Appellant asserts that the allowance of the prior accounts of the trustees does not prevent a subsequent account revising income and principal charges because appellant claims that the prior accounts did not establish income and principal accounts or show any allocation of receipts and disbursements to either income or principal.
Now it is true that the order of the probate court allowing an annual accounting of trustees does not adjudicate what is not before the court nor adjudicate what is not contained in it. MacKenzie v. Union Guardian Trust Co. (1933), 262 Mich 563 and Grigg v. Hanna, supra. In the first 7 annual accounts practically all receipts were allocated to *272 income, including items usually allocated to principal, viz.: first annual account, proceeds from sale of land to Clarence Martin in the amount of $181.27; third annual account, payment on principal from P & G, Inc., note, $553.43, sale of real estate, $300; seventh annual account, payment of principal on P & G, Inc., note, $263.22. The sixth annual account for trust "A" contains a statement that $41,539.14 represents receipts from capital assets and loans used for Gray building remodeling (itemized in remodeling schedule) and a similar statement in the trust "B" accounting of $47,466.94. The remodeling schedule contains an item for $14,090.60 representing "gain on sale of Benton Harbor State Bank stock." The proceeds from the bank stock sale were allocated to principal by reason of being used to pay for remodeling.
Appellant makes no claim that all receipts and disbursements were not fully reported in the first 7 annual accounts, nor that the net income was not shown on each account and distributed to the income beneficiaries. Even though proceeds from the sale of the principal account were reported as income and some of the disbursements were claimed to have been improperly charged to income instead of principal, yet all receipts and disbursements for the periods were actually allocated to either principal or income. The probate court had all the facts before it and we conclude that the allowances by the probate court of the first 7 annual accounts were proper and final as to all parties in interest.
The law prior to adoption of the revised uniform income and principal act[2] was not clear in regard *273 to the proper allocation between principal and income of trustees' fees, attorneys' fees, and court costs as appears from a reading of the annotation, "expenses of trust administration, such as court costs, costs of litigation, bond premiums, attorneys' fees, et cetera, as payable from income or corpus." 124 ALR 1183. These charges in the first 7 annual accounts were reasonably charged in total to income. As to the allocation of principal payments on mortgages the general rule would require such payments to be charged to principal, unless under peculiar circumstances it would be manifestly unfair to the remaindermen, 90 CJS, Trusts, § 276, pp 372, 373.
It is pertinent to point out that at the beginning of the trust estate, there was present in the principal account the following: real estate valued at $361,015, subject to a mortgage of $25,250 and an outstanding legacy of 5% (purchased by mortgaging the Gray building property) in the amount of $31,206.48 leaving a net value of real estate of $304,558.52 and personal property valued at $288,364.56, less $20,048.85 paid to the income beneficiaries, leaving a net of $268,315.71, making a total of $572,874.23 for real estate and personal property in the principal account.
During the period representing the first 7 annual accounts, we find (not including borrowed money) a total income of $354,739.02. The sale of Benton Harbor State Bank stock of $14,090.60 was used in paying for improvements. The total net income disbursed by the trustees to the income beneficiaries during this same period amounted to $160,437.34. At the end of the seventh year the real estate owned by the trusts was the Gray building property apparently still valued at $360,290 less outstanding mortgages then totaling $170,000. In the personal property principal account, there was cash of $2,448.51, *274 100 shares of Benton Harbor Malleable stock valued at $100, certificates of a yacht club valued at $700, office furniture, et cetera $1,107.87 and 43 shares of P & G, Inc., stock valued at $247,567.77 which in the eighth annual account was charged off as worthless. The total value of the personal property amounted to $4,356.38.
At this time (July 1, 1962), the value of the principal account of the trusts could be no more than $194,535.58 whereas on March 1, 1955, it amounted to $572,874.23. The trustee in her amended eighth annual account insisted that the principal should also be charged with an additional $87,000 to reflect claimed proper charges against principal for the first 7 annual accounts which if granted would further reduce the principal account to approximately $107,000 or less. It appears to this Court that the method of allocating expenses used by the trustees in the first 7 annual accounts was fair to both the income beneficiaries and remaindermen. The contestant-remainderman has not complained, and the widow only objected to the proposed eighth annual account because it reflected net income of only $5,767.77 for the year. This objection brought about the filing of the eighth amended annual account which has been approved by the probate and circuit courts except that changing allocation of expenses to income and principal accounts for the first 7 annual accounts was not permitted. The remainderman, St. Joseph-Benton Harbor Memorial Hospital, has not cross-appealed. The widow, the survivor of the 2 income beneficiaries, cannot now complain for she has had full knowledge and notice of the previous annual accounts and receipted in full for her distributive share for the last 3 annual periods as did the testator's father, the other income beneficiary. The latter was an attorney and member of the law firm that handled the trust estate. *275 We must conclude that both were fully informed of the facts including the allocation of the expenses to income as reflected in the first 7 annual accounts. They have acquiesced in what has happened by express consent and failure to object to or appeal from the allowance of the first 7 annual accounts. Holzbaugh v. Detroit Bank & Trust Company (1963), 371 Mich 432, 436. Although there is no claim of, nor do we find, any improper handling of the funds or accounting pursued by the trustees, the case of Sloan v. Silberstein (1966), 2 Mich App 660, 666, 667, is applicable. Though neither income beneficiary asserts herein any claimed rights contrary to the disposition of receipts and disbursements and allocation thereof made in the first 7 annual accounts by the trustees they would be forbidden to do so now by reason of the principle of estoppel.
Affirmed. Costs to appellee.
BURNS and WISE, JJ., concurred.
NOTES
[1] First Second Third Fourth
 Annual Annual Annual Annual
 Accounting Accounting Accounting Accounting
 3/1/55 7/1/56 7/1/57 7/1/58
 to to to to
 ITEMS 7/1/56 7/1/57 7/1/58 7/1/59
 ------------------------------------------------------------------------
 Mortgage Principal
 Payments $ 3,000.00 $ 3,000.00 $ 3,000.00 $ 3,021.60
 1/2 of Trustees' Fees 2,431.29 1,787.04 1,814.48 1,725.41
 1/2 Attorneys' Fees 375.00 445.98 452.75 400.00
 Capital Improvement
 to Lessee, Shoe Corp.
 of America 3,500.00 1,500.00
 Income from
 Gray Building 68,872.78 50,568.29 50,908.03 48,709.80
 Other Income 592.52 490.00 1,580.42 587.50
 Expenses 36,601.02 24,738.18 28,007.31 24,944.28
 Paid Income
 Beneficiary of
 Trust "A" 15,444.14 12,282.73 11,424.61 11,365.55
 Trust "B" 17,650.45 14,037.38 13,056.53 12,987.47
 Fifth Sixth Seventh
 Annual Annual Annual
 Accounting Accounting Accounting
 7/1/59 7/1/60 7/1/61
 to to to
 ITEMS 7/1/60 7/1/61 7/1/62
 ---------------------------------------------------------------
 Mortgage Principal
 Payments $ 3,000.00 $ 3,000.00 $ 3,000.00
 1/2 of Trustees' Fees 1,974.78 1,831.11 1,429.49
 1/2 Attorneys' Fees 508.71 277.51 600.00
 Capital Improvement
 to Lessee, Shoe Corp.
 of America
 Income from
 Gray Building 49,543.43 43,664.26 37,595.54
 Other Income 666.45 599.50 360.50
 Expenses 26,914.70 26,067.07 27,259.43
 Paid Income
 Beneficiary of
 Trust "A" 10,871.16 8,492.40 4,992.10
 Trust "B" 12,424.02 9,704.29 1,426.14*
 4,278.37**
* Testator's father
** Testator's widow

[2] PA 1965, No 340 (CL 1948, §§ 555.51-555.68 [Stat Ann 1965 Cum Supp §§ 26.79(1)-26.79(18)]), effective January 1, 1966 (not applicable to the instant proceeding concerning the first 7 annual accounts because of section 14 of the act).