The **DETROIT BANK & TRUST CO.,** and **Mark C. Stevens,** Co-Executors of the Estate of Mary S. Palmer, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 34941.

United States District Court, E. D. Michigan, S. D.

Nov. 30, 1971.

Long, Franseth, Goodenough, Smith & May, Detroit, Mich., for plaintiff.

John P. Hines, Dept. of Justice, Washington, D. C., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

KEITH, District Judge.

This case is before the Court upon the motions of both parties for summary judgment under Rule 56(e), Federal Rules of Civil Procedure, the parties having submitted a "Stipulation for Agreed Statement of Facts".

Jurisdiction of the Court is based on the provisions of Title 28, United States Code, Section 1346(a) (1) and 2402 as amended (28 U.S.C.A. §§ 1346(a) (1) and 2402).

The Bank was appointed as trustee of a trust established under the Last Will and Testament of one Mary S. Palmer admitted to Probate on October 18, 1965.

After providing for the disbursement of the net income and setting a termination date for the trust of 10 years from the death of a named beneficiary under the trust, Testatrix disposed of the corpus as follows:

"and in equal shares to:

WOMEN'S MEDICAL COLLEGE of Pennsylvania,

MENTAL HEALTH CENTER of Boston, Massachusetts,

TRINITY METHODIST CHURCH of McConnelsville, Ohio,

BLACK BROTHERS FUND of Seattle 4, Washington.

In the event that, at the termination of the trust, any of the institutions named above shall not qualify as a tax exempt recipient under the provisions of Section 2055(a) of the Internal Revenue Code of 1954, (or under the comparable provisions of any future Congressional enactment), then the legacy to such institution shall be paid to such other educational, charitable or philanthropic institution as may be selected by my Trustees, provided only, that it shall be a tax exempt recipient as aforesaid."

The devising instrument proceeded to confer upon the fiduciaries

"In addition to the powers conferred by law the following powers, authorities and discretion which it (or he or they) may exercise, without prior approval of any court or beneficiary:

"3. To make investments of the funds of the estate in securities and to invest in any form of real estate or personal property, including common stock and stocks of issuers

known in fact or in law as 'Investment Trusts' or 'Investment Companies', . . . in the uncontrolled discretion of the Fiduciaries and without regard to the rules and provisions of law regulating investments by Fiduciaries. The Fiduciaries are also authorized to leave funds uninvested.

. . . "5. To allocate all receipts and disbursements between income and principal in such manner as the Fiduciaries shall deem just and equitable, regardless of any rule of law or statute to the contrary."

Plaintiffs, hereinafter referred to as taxpayers, filed a timely estate tax return wherein they took a charitable deduction for $214,653.02. This amount represented the claimed value at the time of decedent's death of the trust remainder interest passing to the four named charitable, educational and religious institutions named in decedent's Last Will and Testament.

The defendant, hereinafter government, disallowed the claimed deduction for the value of the remainder interest passing to the four charities citing Treasury Regulations on Estate Tax (1954 Code) § 20.2055–2. This section states that a "deduction may be taken of the value of the charitable beneficial interest only insofar as the interest is presently ascertainable, and hence severable from the noncharitable interest." The government contends that under the Will, the trustees' power to invest in Mutual Funds and "to allocate all receipts between income and principal in such manner as the Fiduciary shall deem just and equitable, regardless of any rule or law to the contrary" renders the charitable remainder unascertainable.

The particular problem presented in the instant case will not arise for estates subject to the Tax Reform Act of 1969 because Section 201(d) (e) and (g) of that act requires that a trust pay either a fixed dollar amount or a fixed percentage of net fair market value of the trust assets to the life beneficiary before the charitable remainder is eligible for the deduction. These provisions of the Tax Reform Act of 1969 do not apply to the present case due to the fact that the present devising instrument was executed prior to the effective date of the Act. Tax Reform Act, 1969, *supra*, § 201(g).

The question presented for this court's determination is whether the value of the remainder interest bequeathed to named charitable, religious and educational organizations is "presently ascertainable" and hence, deductible under Section 2055, Internal Revenue Code of 1954, considering the broad discretionary powers granted trustees by the decedent over the management and administration of the trust in the devising instrument.

I

A deduction for the value of all bequests to charitable, religious and educational organizations is permitted under the Internal Revenue Code, 26 U.S.C. § 2055(a) (2). Regulations promulgated thereunder allow the deduction to be taken only insofar as the interest is presently ascertainable and hence severable from the non-charitable interest, Treasury Regulations 20.2055–2(a).

The Supreme Court has elucidated the requirement that a qualifying charitable remainder be "presently ascertainable" in five major cases: Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L. Ed. 667 (1928); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Nat. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108; 88 L.Ed. 35 (1943); Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) rehearing denied, 336 U.S. 915, 69 S.Ct. 601, 93 L.Ed. 1078 (1949); Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

In *Merchants Nat. Bank, supra,* decedent had established a testamentary trust consisting of the residue of his es-

tate, with a life estate in his wife and remainder to charity. The trustee was empowered to invade corpus

> "at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and . . . my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust."

The court applied the appropriate provisions of the Revenue Act of 1926 and the Treasury Regulations thereunder (which were substantially identical to Section 2055 of the 1954 Code and Section 20.2055-2 of the Treasury Regulations) and held that the power of invasion provided by decedent's will—which included both a power to invade for the "happiness" of the wife and an injunction to the trustee to exercise its discretion "with liberality" in favor of the wife over the charitable remainderman —was too broad to constitute an "ascertainable standard" which was "fixed in fact and capable of being stated in definite terms of money."

In disallowing the charitable deduction the Court in *Merchants Nat. Bank, supra,* reasoned as follows (320 U.S., p. 261, 64 S.Ct., p. 111):

> "For a deduction under § 303(a) (3) to be allowed Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487 [494, 48 S.Ct. 347, 72 L.Ed. 667]. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately mea-

surable. And, in these cases, the taxpayer has the burden of establishing that the amounts will either be spent by the private beneficiary or reach the charity are thus accurately calculable."

Taxpayers seek to distinguish these five cases as being ones in which there was a direct power of invasion. However, the principle that the same diversion of corpus can be effected through the exercise of discretionary powers over the management and administration of the trust has been recognized in a number of recent appellate decisions. Rand v. United States, 445 F.2d 1166 (2nd Cir. 1971); Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3rd Cir. 1971), cert. denied Henderson v. Commissioner of Internal Revenue, 404 U.S. 828, 92 S.Ct. 64, 30 L.Ed.2d 57; Florida Bk. at Lakeland v. United States, 443 F.2d 467 (5th Cir. 1971); Miami Beach First Nat. Bk. v. United States, 443 F.2d 475 (5th Cir. 1971); First Nat. Bk. in Palm Beach v. United States, 443 F.2d 480 (5th Cir. 1971); Greer v. United States, 448 F.2d 937 (4th Cir. 1971); Gardiner v. United States, 24 Am.Fed.Tax R.2d par. 69–6108 (——D.—— Ariz., 1969), appeal docketed, No. ——, (9th Cir. 1971); Estate of Toulmin, Jr. v. United States, 326 F.Supp. 1028 (S.D.Ohio, 1971), appeal docketed, No. —— (6th Cir. 1971).

Most of the authorities sustaining the principle that broad administrative powers can prevent the deduction, as well as those rejecting it, rely heavily on trust law doctrines and practices of the particular state involved as well as the language of the trust instrument under consideration.

In *Rand, supra,* the trustees were given broad powers of administration and the court stated there was nothing in Vermont law to indicate that effect would not be given to the broad language in the trust instrument. In *Stewart, supra,* the court denied the deduction partly on the conclusion that under New York law the trustee could

"shift 'very substantially . . . the economic benefits of the trusts between the life tenants and the remaindermen'". The court in *Toulmin, supra,* distinguished *Stewart* on grounds that the powers granted the trustee in Toulmin were more limited than those in *Stewart*; in addition, the court stated that New York law differed substantially from Ohio law in that Ohio does not grant the broad powers to trustees as New York law does.

The reasoning in these cases is instructive to the court in the instant case in that attention there focused on the relevant state law applicable to the administration of trusts as well as the literal language of the instrument. Similarly here the court must consider the explicit language of the Palmer Will along with the relevant Michigan law.

## II

Under the Palmer Will the trustees received inter alia, the following "powers, authorities and discretion", to be exercised "without prior approval of any court or beneficiary": (1) the power "To sell, exchange, convey, mortgage, lease and grant options with respect to any and all real and personal property belonging to the estate for such consideration as may seem fair and reasonable to the fiduciary"; (2) the power "To make investments . . . in securities and to invest in any form of real estate or personal property, including common stock and stocks of issuers known in fact or in law as 'Investment Trusts' or 'Investment Companies', all in the uncontrolled discretion of the fiduciaries and without regard to the rules and provisions of law regulating investments by fiduciaries." The fiduciaries are also authorized to leave funds uninvested; and (3) the power "To allocate all receipts and disbursements between income and principal in such manner as the Fiduciaries shall deem just and equitable, regardless of any rule of law or statute to the contrary".

As an illustration of how invasion of principal may occur, the government points to the trustees' power to invest in mutual funds. Mutual fund shares and the dividends received from them represent capital gains realized from the sale of securities owned by the fund. Rev. Rul. 60–385, 1960–2 Cum.Bull. 77, 78, states that—

" . . . if the trust instrument provides that dividends representing capital gains realized as aforesaid shall (or, in the trustees' discretion, may) be treated as income and paid to the life tenant, or if the instrument could be so construed under applicable local law, then the charitable interest is not severable from the noncharitable interest since no known formula has been advanced for ascertaining the value of the charitable interest. Therefore, no deduction for income, estate, or gift tax purposes is allowable with respect to the transfer."

Inasmuch as the Palmer trustees also had the power to allocate all receipts and disbursements between principal and income as they in their discretion saw fit, regardless of any rule of law or statute to the contrary, it is the opinion of this court that the possibility of an invasion of principal exists and is not remote.

From a literal reading of the relevant trust provisions it is evident that decedent's trustees are vested with broad discretionary powers in the management and administration of this trust. Whether the power is limited under Michigan law so as to prevent invasion of principal is the next germane question to be considered.

## III

The Revised Uniform Principal and Income Act was enacted in Michigan in 1965, effective January 1, 1966. (Mich. Stat.Ann. (1971 Cum.Supp.), § 26.79(1), et seq.) Section 26.79(2) M.C.L.A. §§ 555.51 et seq., 555.52 provides, in pertinent part, that—

"(a) A trust shall be administered with due regard to the respective interests of income beneficiaries and re-

maindermen. A trust is so administered with respect to the allegation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or party to each

(1) In accordance with the terms of the trust instrument, not withstanding contrary provisions of this act;

(2) In the absence of any contrary terms of the trust instrument, in accordance with the provisions of this act; . . .

(b) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee has made an allocation contrary to a provision of this act."

The Supreme Court of Michigan stated in Donovan v. National Bank of Detroit, 384 Mich. 595, 185 N.W.2d 354, 360 (1971), in quoting from a statement made by the Commissioners on Uniform State Laws as follows

" 'The Act [Uniform Principal and Income Act], therefore, sets forth simple and workable rules of administration which are believed to be consistent with the wishes of settlors upon the subject treated unless the settlor *specifically provides* for a different treatment in his own trust instrument.' (Emphasis added.) Vol. 9B ULA 569–571."

■ It seems obvious from a reading of the pertinent parts of the Act that in Michigan, a settlor can, in the trust instrument, give a trustee the power to allocate receipts and disbursements between income and principal, in his discretion, notwithstanding contrary provisions as to allocation in the same Act where the trust instrument is silent in this regard.

The Palmer trust instrument provides specifically in clear and unambiguous terminology that all receipts and disbursements are to be allocated between income and principal, as the trustees deem just and equitable, without the prior approval of any court or beneficiary and regardless of any rule of law or statute to the contrary. The court is not persuaded by taxpayers' arguments that there is ambiguity or that discretion was not specifically provided herein.

The court's attention has been called to several Michigan cases by taxpayers to show that under Michigan law courts would intervene if trustees were to shift beneficial interest. Matter of Estate of Ruggles, 275 Mich. 237, 266 N.W. 332 (1936) is cited for the proposition that a testamentary grant of unlimited discretion with broad powers is not a substitute for explicit direction to invade corpus. In that case creditors contended that trustees' unlimited discretion did not allow trustees to exercise their stock control over the affairs of a company in such manner as to continue its operation to the exclusion of creditors. The case is hardly apposite here; there was no issue as to invasion of capital.

It is not suggested that trustees are completely unlimited in their use of discretionary power in Michigan. Certainly the courts would act, if called upon, where bad faith, collusion or the like were shown. However, taxpayers point to no Michigan decisions which require any more than that fiduciaries act in good faith.[1]

Reference is also made to In re Krause's Estate (1960), 19 Mich.App. 155, 172 N.W.2d 468, to show that Michigan law would prevent shifting of beneficial interest, specifically that the Attorney General is a necessary party in interest in estate proceedings where there are charitable interests. In this case the trustees asked for a ruling as to

1. Caspari v. Cutcheon, 110 Mich. 86, 67 N.W. 1093 (1896)
In re Gray Estate, 9 Mich.App. 262, 156 N.W.2d 594 (1967)

Watling v. Watling, 15 F.2d 719 (E.D. Mich.1926) affirmed 6 Cir., 27 F.2d 193.

whether they could individually purchase some trust assets. The Attorney General held that they could not, but, as taxpayers indicate, the matter was ultimately decided by the Court of Appeals in favor of the trustees on the grounds that they were specifically authorized in the trust instrument to individually purchase trust assets. In this court's view, this case supports the proposition that trustees may act as they are authorized to act under the trust more than the proposition that the Attorney General will intervene where there are charitable interests involved.

The crucial issue is not that the trustees will do something so severe as to completely erode corpus but that a steady attrition can occur that would render the value of the remainder not presently ascertainable.

It should be noted that taxpayers have urged that the court follow Massachusetts probate law based on the fact that Michigan follows the so-called "Massachusetts rule" rather than the so-called "Pennsylvania rule" regarding the allocation of stock and cash dividends between principal and income. However, it is our view that the Revised Uniform Principal and Income Act, *supra*, adopted in Michigan, in providing for the exercise of discretion by trustees, does not necessitate, application of Massachusetts or any foreign law. Michigan, unlike Massachusetts, has no precedent on the question presented but the Act *id.*, controls the disposition of the instant matter because it specifically provides for the exercise of discretion by trustees in their administration of trusts. Thus we hold that the beneficial interest herein can be shifted and that Michigan law does not limit such discretion by a "measurable standard" required by Treasury Regulations for presently ascertainable charitable remainders.

Therefore, defendant government's motion for summary judgment is granted and plaintiff taxpayers' motion for summary judgment is denied.