100 Mich. App. 657 (1980)
300 N.W.2d 359
In re BUTTERFIELD ESTATE.
GOWTHORPE
v.
PAGE.
Docket No. 46366.
Michigan Court of Appeals.
Decided October 8, 1980.
Dickinson, Wright, McKean, Cudlip & Moon (by Douglas D. Roche, Richard J. Meyers and Thomas A. Zimmer), for the trustees.
Landman, Luyendyk, Latimer, Clink & Robb (by Jon D. Vander Ploeg), for the contestants.
Before: R.B. BURNS, P.J., and BASHARA and M.F. CAVANAGH, JJ.
PER CURIAM.
The will of Walter S. Butterfield, who died in 1936, established a trust, most of the income of which was to be paid to his surviving widow and to his six children. In the event of the death of a child of the decedent before termination of the trust, the income from the child's share was to be paid to the issue of such child. The trust is to continue until the death of the decedent's widow *661 and all of his children, at which time the remaining trust property will be divided equally among all of the decedent's grandchildren who are then living.
Since the corpus of the trust consists solely of 100% of the stock of Bijou Theatrical Enterprise Company, the income of the trust is derived entirely from the dividends declared and paid by Bijou, plus the interest on the temporary savings account maintained by the trustees. The assets of Bijou consist of real estate and securities. This company derives its income from rental payments on the real estate and the dividend and interest income on the securities. Two of Bijou's major holdings consist of 74.2% of the outstanding shares of W.S. Butterfield Theatres, Inc. (Butterfield Theatres) and two-thirds of the outstanding shares of Butterfield Michigan Theatres Company (Butterfield Michigan), together referred to as the "operating companies". The University of Michigan owns the minority interest in each of these two companies. Each of the companies operates motion picture theatres in a number of Michigan communities. In addition, Butterfield Theatres owns all or a portion of the outstanding stock of other theatre corporations.
The decedent's will appointed the Central Trust Company of Lansing, Michigan, and three named individuals as trustees. It also provided that the successor to one of the individual trustees shall be "an experienced, competent man in the theatrical business" and that the successors to the two other individual trustees shall be "competent and experienced lawyers".
During the calendar year 1975, the time period covered by the 37th annual account, the attorney trustees were Richard C. Van Dusen and Richard B. Gushee. The trustee experienced in the theatrical *662 business was Montague F. Gowthorpe, who was president and chief executive officer of Bijou and the two operating companies from 1949 through 1975. He was a trustee of this trust from 1949 until his death on October 9, 1979. The corporate trustee was American Bank and Trust Company of Lansing, Michigan, the successor by merger to Central Trust Company of Lansing. John R. Pettibone, senior vice president and a director of American Bank and Trust, was the officer of the corporate trustee directly responsible for the Butterfield trust.
During the period of the 37th annual account, the five directors of Bijou were Gowthorpe, Pettibone, Van Dusen, and Gushee, the trustees of the trust, and Lyle W. Smith, president of Bijou. During the same period, the six directors of Butterfield Theatres were Gowthorpe, Pettibone, and Van Dusen, all trustees, Smith, who was also president of Butterfield Theatres, and Gerald R. Dunn and Paul W. Brown, regents of the University of Michigan. Also during this time, the six directors of Butterfield Michigan were Gowthorpe, Pettibone and Gushee, all trustees, Smith, who was also president of Butterfield Michigan, and regents Dunn and Brown. Pettibone also served as vice president of Bijou and secretary of all three companies.
The objections to the 37th annual account were initially filed by Jesse W. Page, III, one of the 17 surviving grandchildren of the decedent. He is a remainderman and, on the death of his mother in 1969, he became an income beneficiary. Page objected to both the form of the accounting and to the investment activities of the trustees. He asked that the probate court disallow the account, order the trustees to file a new account containing additional *663 financial information, order the trustees to cause the distribution of excess accumulations of income, and order the trustees to make an adequate diversification of the trust estate. Page also petitioned for the removal of Gowthorpe as a trustee and for the appointment of a successor. Several of the other beneficiaries of the trust joined in Mr. Page's objections and petitions.
After hearings on the account and the various objections and petitions, the probate court for the County of Calhoun entered an order on July 16, 1979, which allowed the 37th annual account, denied the petition to remove Gowthorpe as a trustee for lack of sufficient grounds, and denied the petition for an order directing the trustees to cause distributions of the earnings of the operating companies accumulated prior to August 4, 1978; however the court ruled that the trustees would have to justify in the future any retention in excess of 25% of the net income of the so-called operating companies. In all other respects, the court overruled the objections to the account. The significance of August 4, 1978, is that that was the date of the court's opinion which initially ruled on the accounting and the objections and petitions filed by Page.
The trustees timely filed a claim of appeal, and the objecting trust beneficiaries filed their cross-appeal. Recognizing that a substantial question existed as to the jurisdiction of this Court to entertain the appeal and cross-appeal from this probate court order, this Court ordered the parties to file separate briefs on the question of jurisdiction.
The appeal and the cross-appeal were filed in this Court pursuant to MCL 600.861; MSA 27A.861, which provides inter alia that a party to a proceeding *664 in the probate court may appeal as a matter of right to the Court of Appeals from a "final order affecting the rights or interests of any interested person in an estate or trust". This provision is part of Chapter 8 of the Revised Judicature Act which was added by 1978 PA 543 and took effect July 1, 1979. Resolution of the jurisdictional question requires the examination of the probate court's order of July 16, 1979, to determine: (1) whether it is an order entered in a "trust" as that term is used in the statute, (2) whether the order is "final" in whole or in part, and (3) whether the order affects the rights or interests of persons in the trust.
The jurisdiction of the Court of Appeals is established by the Legislature. Const 1963, art 6, § 10. The Legislature has the authority to prescribe in what cases and under what circumstances appeals may be taken. Moore v Spangler, 401 Mich 360, 369; 258 NW2d 34 (1977). 1978 PA 543 was enacted in conjunction with 1978 PA 642, the Revised Probate Code. MCL 700.1 et seq.; MSA 27.5001 et seq. Since the effectiveness of each of these acts was made contingent upon the enactment of the other,[1] we have concluded it is the intent of the Legislature that these acts be read together. In the Matter of Antieau, 98 Mich App 341; 296 NW2d 254 (1980).
We therefore turn to the definition of the term "trust" found in § 11 of the Revised Probate Code, which provides in pertinent part as follows:
"(2) `Trust' means an express trust, private or charitable, with additions thereto, where created and whether created by will or other than by will." MCL 700.11; MSA 27.5011: *665 The trust in the instant case, having been created by will, is therefore a "trust" as that term is used in MCL 600.861; MSA 27A.861.
Application of the "finality" standard to determine which probate court orders are appealable to this Court is rendered difficult because of the lack of any statutory or rule definition of the term "final" as used in MCL 600.861; MSA 27A.861. The question of finality is one which can be determined only on a case-by-case basis by analysis of the issues decided by a particular probate court order and its precise effect on the rights of the parties involved. In re Swanson Estate, 98 Mich App 347; 296 NW2d 256 (1980).
Is a probate court order allowing an annual account in a testamentary trust a "final" order? Regarding an order allowing the account of a fiduciary, MCL 700.564; MSA 27.5564 provides in pertinent part as follows:
"(4) Subject to the right of appeal, and except in case of fraudulent concealment or fraudulent misrepresentation on the part of the fiduciary, the order of the court allowing an account of a fiduciary shall be final and conclusive against all persons in any way interested therein."
This characterization of an order allowing an account of a fiduciary certainly indicates a legislative intent that such an order be considered final for purposes of appeal under MCL 600.861; MSA 27A.861.
This conclusion is buttressed by this Court's construction of the statutory predecessor to MCL 700.564; MSA 27.5565. Section 39 of the former probate code, MCL 704.39; MSA 27.3178(290), provided in pertinent part as follows:
"The order of the probate court allowing any account *666 of a fiduciary shall, subject to the right of appeal, and except in case of fraudulent concealment or fraudulent misrepresentation on the part of the fiduciary be final and conclusive against all persons in any way interested therein."
This Court, in the case of In re Gray Estate, 9 Mich App 262; 156 NW2d 594 (1967), held that this statutory language meant that the allowance of an annual account of testamentary trustees, after notice and without appeal, is final and binding.
The remaining question, in determining the applicability of MCL 700.564; MSA 27.5564 to the instant case, is whether or not the trustees of the Butterfield Trust are "fiduciaries" as defined in the Revised Probate Code. Section 5 of the new code, MCL 700.5; MSA 27.5005, provides that the term "fiduciary" includes a testamentary trustee until § 598 applies. That section of the Revised Probate Code, MCL 700.598; MSA 27.5598, provides that a testamentary trustee may proceed under article 8 upon qualifying and filing his inventory. Article 8 of the Revised Probate Code, MCL 700.801 et seq.; MSA 27.5801 et seq., provides for the administration of trusts without continuing probate court supervision. Although § 814 of the code, MCL 700.814; MSA 27.5814, requires a trustee to keep all beneficiaries of the trust informed of the administration, no section of article 8 requires court approval of annual accounts of testamentary trustees.
The trustees of the Butterfield Trust filed their 37th annual account before the effective date of the Revised Probate Code and sought probate court approval of that account. Therefore, the testamentary trustees here were not operating under article 8 and, therefore, did not exempt *667 themselves from the definition of the term "fiduciary" found in MCL 700.5; MSA 27.5005. The trustees of the Butterfield Trust, as far as the 37th annual account is concerned, are fiduciaries as defined by the Revised Probate Code and, therefore, the provision of the probate court's order of July 16, 1979, allowing the 37th annual account is "final" as that term is used in MCL 600.861; MSA 27A.861. Since allowance of the account clearly affects the pecuniary interests of the objecting beneficiaries, we find that provision of the order appealable as a matter of right to this Court.
Is the provision of the probate court order denying the objections to the annual account also final? Finding no guidance in the Revised Probate Code, MCL 700.1 et seq.; MSA 27.5001 et seq., we examine the jurisprudence of our neighboring states which have schemes for review of probate court orders similar to ours. We conclude that an order denying objections to an account is not in and of itself final. In re Estate of Moses, 13 Ill App 3d 137, 144; 300 NE2d 473, 477 (1973), Rutledge v Trautman, 221 Ind 623; 51 NE2d 4 (1943). However, the denial of the objections may be reviewed as part of the appeal of the allowance of the final account, because the decision on the objections underlies and is part of the probate court's ruling on the account. Likewise, those provisions of the probate court order denying the petitions to compel the trustees to file an amended accounting and to distribute the alleged excess income accumulated during calendar year 1975 are reviewable as part of the appeal on the allowance of the account because they are incident to the probate court's allowance of that account.
This conclusion does not determine whether the remaining provisions of the probate court order in *668 question are appealable as a matter of right to this Court under MCL 600.861; MSA 27A.861. The various decisions contained in the probate court order of July 16, 1979, could have been put into separate orders. The probate court order in question here is analogous to an order of the circuit court which, in a multiple party case, has granted summary judgment dismissing some of the defendants with the inclusion of the wording required by GCR 1963, 518.2 to make the dismissal final and which has denied accelerated judgment dismissing other defendants. The mere fact that the portion of the order dismissing certain defendants would be final and appealable as a matter of right to this Court, under MCL 600.309; MSA 27A.309 and GCR 1963, 518.2 and 806.1, could not make final that portion of the order denying an accelerated judgment of dismissal as to other defendants. An order denying accelerated judgment is inherently interlocutory. Bohannon v Campbell, 38 Mich App 422; 196 NW2d 836 (1972). The finality of the remaining provisions of the probate court's order can be determined only by an examination of the precise effect on the rights of the parties involved. The test of finality is whether these provisions affect, with finality, any of the rights of the parties of the subject matter. Estate of Swanson, supra.
The probate court order of July 16, 1979, includes the following provisions:
"4. The allowance of this account is not an indication of the Court's approval of the manner in which the Trustees currently exercised their discretion as to the conduct of the business entities under their control. As such, the allowance of the account neither expressly or by implication mitigates the finding that the trustees must justify in the future any retention in excess of *669 25% of the net income of the so-called operating companies.

* * *
"6. The Court's order contained in the second sentence of Paragraph 4 of this order is applicable to earnings of W.S. Butterfield Theatres, Inc. and Butterfield Michigan Theatres Co. retained after August 4, 1978."
Is this portion of the probate court order "final" and therefore appealable as a matter of right to this Court? A careful analysis of these provisions and their effect is required to resolve the "finality" question.
These provisions of the probate court's order do not overrule any action taken by the trustees during calendar year 1975, the time period covered by the 37th annual account. The trustees have not been surcharged for any conduct during this time period nor has their management of the trust been found improper in any respect. A careful reading of the language of the order indicates that the probate court has not decreed that the trustees must take action to obtain payment and dividends of at least 75% of the net income of the two operating companies after August 4, 1978. The probate court has not even indicated what specific standards will be applied in determining whether or not retention of more than 25% of the net income of the operating companies would be justified. The probate court has done no more than put the trustees on notice that it will require them to explain the retention of more than 25% of the net income. Whether or not the trustees will be required to take action to have at least 75% of the net income of the operating companies declared as dividends has been left to future determination on *670 a yearly basis.[2] Since the probate court has not made a decision as to what amounts of income of the operating companies must be made available to the trust and distributed to the trust beneficiaries, that portion of the probate court order contained in paragraphs 4 and 6 is not "final" and, therefore, not appealable to the Court of Appeals under MCL 600.861; MSA 27A.861.
The appeal taken by the trustees must be dismissed for lack of jurisdiction. In view of this conclusion, we do not reach the questions of whether the trustees are "interested persons" under MCL 600.861; MSA 27A.861 or "aggrieved parties" under GCR 1963, 806.1.
Is that portion of the probate court order denying the petition for removal of Montague F. Gowthorpe as trustee "final" and therefore appealable to this Court? There is no language in the Revised Probate Code, MCL 700.1 et seq.; MSA 27.5001 et seq., which gives any guidance in answering this question. We therefore again examine the jurisprudence of neighboring states. In Illinois, a chancery decree denying removal of a trustee of a testamentary trust has been held to be a final order. Suffolk v Leiter, 261 Ill App 82 (1931). The Indiana Supreme Court has held that a probate court order denying a petition to remove an administrator of a decedent's estate was a final order. McCool v Old National Bank in Evansville, 214 Ind 679; 17 NE2d 820 (1938). Following these authorities, we conclude that the portion of the order denying the removal of Mr. Gowthorpe was final and, therefore, appealable to this Court. However, we must consider the effect of his intervening death.
*671 If an event occurs which renders it impossible for the reviewing court to grant any relief even if it rules in favor of the party raising the issue, then that issue is moot. Swinehart v Secretary of State, 27 Mich App 318; 183 NW2d 397 (1970). This Court does not issue abstract opinions of purely academic interest. Detroit v Killingsworth, 48 Mich App 181; 210 NW2d 249 (1973). Mr. Gowthorpe's death on October 9, 1979, has rendered it impossible for this Court to grant relief even if we were to find erroneous the denial of the petition for his removal. The appeal as to the portion of the order denying the petition for his removal is dismissed as moot.
In summary, the appeal taken by the trustees is dismissed for lack of jurisdiction without prejudice to their filing in the circuit court a motion for leave to appeal pursuant to GCR 1963, 703. The cross-appeal is dismissed insofar as it pertains to the denial of the petition for the removal of Montague F. Gowthorpe. The cross-appellants may pursue the appeal insofar as it pertains to allowance of the 37th annual account and all rulings incident thereto.
NOTES
[1] Section 2(2) of 1978 PA 543 and § 991(2) of 1948 PA 642.
[2] On January 15, 1980, the probate court allowed the 40th annual account filed by the trustees, which encompassed the calendar year 1978. That order is the subject of a separate appeal taken by the same beneficiaries who are the appellees and cross-appellants in this appeal.