*In re* BUTTERFIELD ESTATE

PAGE v GOWTHORPE

Docket Nos. 46366, 49743, 49744, 49745. Submitted June 1, 1981, at Grand Rapids.—Decided August 5, 1981. Leave to appeal applied for.

The will of Walter S. Butterfield, who died in 1936, established a trust which was to continue until the death of the decedent's wife and all his children, at which time the trust property was to be divided among all of the decedent's grandchildren then living.. The income of the trust was to be paid to decedent's widow and his six children or to the issue of any child if the child died before the termination of the trust. The trustees filed with the Calhoun Probate Court the 37th annual account, that account being for calendar year 1975. Jesse W. Page, III, an income beneficiary and remainderman, and other beneficiaries filed with the probate court objections contesting the 37th annual account, seeking that the court disallow the account, order a new account with additional financial information, order the trustees to distribute excess accumulations of income, order the trustees to make adequate diversification of the trust estate and remove Montague F. Gowthorpe as a trustee and appoint a successor. On July 16, 1979, Wendel L. Schoder, J., issued an order which allowed the 37th annual account, denied the petition to remove Gowthorpe as a trustee and denied the petition for an order directing the trustees to distribute earnings of operating companies controlled by the trust. The court, however, did rule that in the future the trustees would have to justify any retention of income in excess of 25% of the net income of those operating companies accumulated after August 4, 1978, the date of the court's initial opinion in this matter. In all other respects the objections to the account were overruled. The trustees filed a claim of appeal. The contesting beneficiaries filed a cross-appeal. The Court of Appeals dismissed the trustees' appeal relative to the question of the probate court's order regarding the justification of the retention of excess income, holding that that portion of the order was not final and

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 76 Am Jur 2d, Trusts, §§ 281, 516.

therefore not appealable as of right. The beneficiaries were allowed to pursue their cross-appeal from the allowance of the 37th annual account. 100 Mich App 657 (1980). Meanwhile, the probate court allowed the 38th, 39th and 40th accounts without any further requirements for distribution of income. The beneficiaries objected to allowance of these accounts on the same basis as they did the 37th account, and appealed from the orders allowing these accounts. The appeals were consolidated with the continuing appeal from the 37th account. *Held:*

1. The accounting filed by the trustees complied with the statute regarding transactions directly involving the trust and a holding company, the stock of which comprises the corpus of the trust. A more detailed accounting on the public record is not required. The trustees are required, however, to provide the beneficiaries with necessary information regarding the operating companies which are owned by the holding company and which produce the trust income.

2. The probate court did not err by requiring the trustees to justify the retention of any amount in excess of 25% of the income of the companies. Because the trustees have retained such excess earnings, the requirement for justification of the retention is to be made retroactive to January 1, 1976, the first day of the period encompassed in the 38th account.

Remanded for further proceedings.

1. TRUSTS — COURTS — PROBATE COURTS — STATUTES.

A probate court has the authority to order the trustees of a trust to make available to the beneficiaries of the trust information necessary to advise the beneficiaries of transactions involving the trust if the trustees fail to make the information available (MCL 700.814 *et seq.;* MSA 27.5814 *et seq.*).

2. TRUSTS — COURTS — PROBATE COURTS — STATUTES.

A probate court has jurisdiction over proceedings concerning the internal affairs of trusts (MCL 700.21[c], 700.805[1]; MSA 27.5021[1], 27.5805[1]).

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg),* for the beneficiaries.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Douglas D. Roche* and *Richard J. Meyers),* for the trustees.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

R. B. BURNS, P.J. The background for the present case is set forth in *In re Butterfield Estate,* 100 Mich App 657; 300 NW2d 359 (1980), as follows.

The will of Walter S. Butterfield, who died in 1936, established a trust, most of the income of which was to be paid to his surviving widow and to his six children. In the event of the death of a child of the decedent before termination of the trust, the income from the child's share was to be paid to the issue of such child. The trust is to continue until the death of the decedent's widow and all of his children, at which time the remaining trust property will be divided equally among all of the decedent's grandchildren who are then living.

Since the corpus of the trust consists solely of 100% of the stock of the Bijou Theatrical Enterprise Company, the income of the trust is derived entirely from the dividends declared and paid by Bijou, plus the interest on the temporary savings account maintained by the trustees. The assets of Bijou consist of real estate and securities. This company derives its income from rental payments on the real estate and the dividend and interest income on the securities. Two of Bijou's major holdings consist of 75.2% of the outstanding shares of W. S. Butterfield Theatres, Inc. (Butterfield Theatres), and two-thirds of the outstanding shares of Butterfield Michigan Theatres Company (Butterfield Michigan), together referred to as the "operating companies". The University of Michigan owns the minority interest in each of these two companies. Each of the companies operates motion

---

* Circuit judge, sitting on the Court of Appeals by assignment.

picture theatres in a number of Michigan communities. In addition, Butterfield Theatres owns all or a portion of the outstanding stock of other theatre corporations.

The decedent's will appointed the Central Trust Company of Lansing, Michigan, and three named individuals as trustees. It also provided that the successor to one of the individual trustees shall be "an experienced, competent man in the theatrical business" and that the successors to the two other individual trustees shall be "competent and experienced lawyers".

During the calendar year 1975, the time period covered by the 37th annual account, the attorney trustees were Richard C. Van Dusen and Richard B. Gushee. The trustee experienced in the theatrical business was Montague F. Gowthorpe, who was president and chief executive officer of Bijou and the two operating companies from 1949 through 1975. He was a trustee of this trust from 1949 until his death on October 9, 1979. The corporate trustee was American Bank and Trust Company of Lansing, Michigan, the successor by merger to Central Trust Company of Lansing. John R. Pettibone, senior vice president and a director of American Bank and Trust, was the officer of the corporate trustee directly responsible for the Butterfield trust.

During the period of the 37th annual account, the five directors of Bijou were Gowthorpe, Pettibone, Van Dusen, and Gushee, the trustees of the trust, and Lyle W. Smith, president of Bijou. During the same period, the six directors of Butterfield Theatres were Gowthorpe, Pettibone, and Van Dusen, all trustees, Smith, who was also president of Butterfield Theatres, and Gerald R. Dunn and Paul W. Brown, regents of the University of Michi-

gan. Also during this time, the six directors of Butterfield Michigan were Gowthorpe, Pettibone and Gushee, all trustees, Smith, who was also president of Butterfield Michigan, and regents Dunn and Brown. Pettibone also served as vice president of Bijou and secretary of all three companies.

The objections to the 37th annual account were filed by Jesse W. Page, III, one of the 17 surviving grandchildren of the decedent. He is a remainderman and, on the death of his mother in 1969, he became an income beneficiary. Page objected to both the form of the accounting and to the investment activities of the trustees. He asked that the probate court disallow the account, order the trustees to file a new account containing additional financial information, order the trustees to cause the distribution of excess accumulations of income, and order the trustees to make an adequate diversification of the trust estate. Page also petitioned for the removal of Gowthorpe as a trustee and for the appointment of a successor. Several of the other beneficiaries of the trust joined in Mr. Page's objections and petitions.

After hearings on the account and the various objections and petitions, the probate court for the County of Calhoun entered an order on July 16, 1979, which allowed the 37th annual account, denied the petition to remove Gowthorpe as a trustee for lack of sufficient grounds, and denied the petition for an order directing the trustees to cause distributions of the earnings of the operating companies accumulated prior to August 4, 1978; however the court ruled that the trustees would have to justify in the future any retention in excess of 25% of the net income of the so-called operating companies. In all other respects, the

court overruled the objections to the account. The significance of August 4, 1978, is that it was the date of the court's opinion which initially ruled on the accounting and the objections and petitions filed by Page.

The trustees appealed, claiming that the court did not have the authority to require them to distribute 75% of the accumulated net income to the beneficiaries and in the alternative that if the court did have such authority there was no evidence before the court to allow the conclusion that the retained earnings were excessive.

The beneficiaries cross-appealed, claiming that the court erred by not requiring the trustees to file a more detailed account and by not requiring the trustees to distribute excessive retained earnings.

Subsequently, the probate court allowed the 38th, 39th and 40th annual accounts and the benficiaries have appealed from the orders allowing those accounts. Those appeals have been consolidated with the appeal regarding the rulings incident to the 37th annual account. See 100 Mich App 657, 671; 300 NW2d 359 (1980).

MCL 704.38; MSA 27.3178(289), the applicable law at the time the accounts were filed, stated in part:

"Every fiduciary shall file at least once a year, or oftener if the court directs, a compete itemized accounting of all of his doings in the estate, showing in detail all of the receipts and disbursements and the property remaining in his hands, and in what form."

The accounting filed by the trustees complies with the statute regarding the transactions directly involving the trust and Bijou Theatrical Enterprises Company. The beneficiaries object because the accounting fails to show the transactions

of the other two corporations in which Bijou Theatrical Enterprises had major holdings, Butterfield Threatres and Butterfield Michigan. However, it is admitted that the financial statements prepared by Price Waterhouse & Company for both corporations have been distributed annually to all beneficiaries.

The trial court held that the theatrical business is a highly competitive business and that a more detailed accounting on the public record should not be required.

We agree.

If the trustees fail to make necessary information available to the beneficiaries the probate court, under MCL 700.814 *et seq.;* MSA 27.5814 *et seq.,* has the authority to order such performance.

The trial judge stated:

"The Court concludes that the trustees *may* have lost sight of the fact that the business exists as a device to carry out the purpose of the trust, rather than the trust existing to carry out the purpose of the business." (Emphasis in original.)

We agree. It is obvious from the record that the trustees who also serve as directors for Bijou, the holding company, and Butterfield Theatres and Butterfield Michigan, the operating companies, have shown more interest in the advancement of the business enterprises than in the interest and well-being of the trust and its beneficiaries. It appears they have lost sight of their fiduciary duties owed to the beneficiaries.

While the probate court does not have any power over directors of independent corporations the court does have jurisdiction over "[p]roceedings concerning the internal affairs of trusts". MCL

700.21(c); MSA 27.5021(1), MCL 700.805(1); MSA 27.5805(1).

Under the circumstances of this case the court had the authority and duty to take positive action. The trial judge was not in error by requiring the trustees to justify the retention of any amount in excess of 25% of the net income of the operating companies.

It is evident from the record that the trustees (directors) have retained an excessive amount of income for the advancement of the business, to the detriment of the beneficiaries. Such actions thwart the intention of the testator.

It is our opinion that since the trustees have retained excessive earnings in the corporations the 75%—25% retention rule should be retroactive to January 1, 1976, the first day of the 38th account, if such a division can be made without jeopardizing the trust.

Remanded to the probate court for proceedings consistent with this opinion. No costs, neither party prevailing in full.