Pierson R. Hildreth, S.
This is an intermediate accounting by the individual trustee, Eobert A. Pinkerton, for the period September 1, 1954 to February 24, 1955 and by the individual trustee and the Chase Manhattan Bank as cotrustees for the period from February 25,1955 to January 31, 1966. Objections to the account have been interposed by Allan P. Carlisle, a son of decedent who was his mother. He is the income beneficiary of a trust under her will, and his children are the primary remaindermen. The individual trustee is a nephew of decedent but he is not a beneficiary. A principal asset of the trust consists of 50 shares of the total authorized capital stock of 1,000 shares of Pinkerton’s, Inc., a close corporation which is a detective agency. The individual trustee at all times and from prior to decedent’s death owned 700 shares in his individual capacity. The objections are based primarily upon a contention that the individual trustee should have caused the corporation to declare larger annual cash dividends so that the son income beneficiary would have received more income.
The decedent, Mary Carlisle, died March 25, 1937. She was survived by her husband who died shortly after on November 17, 1937, and by her three sons, Jay, Allan and Lewis. She gave *548 each son $25,000 and created a trust of her residuary estate to pay the income to her husband for his life, and upon his death to divide the corpus into three separate trusts, one for each of her sons for their respective lives with the remainder of each trust upon the death of each son to pass to the issue of such son, or, in default of issue, to the issue of the decedent living at the death of such son per stirpes.
Testatrix originally appointed her husband and her nephew, Robert A. Pinkerton, executors and trustees of the trusts. She authorized retention of all investments, and gave full discretion as to retention or reinvestment. She gave express power to determine whether specified corporate distributions should be treated as income or principal, gave other powers, and expressly stated that “ Every election, determination, or other exercise by my Executors or Trustees of any discretion in this my Will expressly or by implication granted, whether made upon a question actually raised, or implied, in their acts or proceedings, shall be conclusive and binding upon all persons. ’ ’
When the testatrix died she owned 150 shares of stock of the corporation now known as Pinkerton’s, Inc. Her nephew, Robert, whom she appointed as one of her executors and trustees then and at all times since has owned 700 shares of the 1000 shares of the corporation then issued and outstanding. Other members of the family owned the other 150 shares. When the three trusts for the three sons were set up 50 shares of the Pinkerton stock were allocated to each trust. With respect to the trust for the benefit of decedent’s son, Allan, the 50 shares transferred to the corpus of his trust continued to comprise a portion of the assets of his trust ever since.
Pinkerton’s, Inc. was and is a Delaware corporation. Testatrix acquired her stock in 1925 when the corporation was organized as successor to a partnership which was founded in 1850. When testatrix made her will she knew that her nephew, Robert, whom she appointed executor and trustee, was the owner of 700 shares and she knew that he was president and director of the corporation. Allan, the income beneficiary, has two infant children who are the prospective remaindermen of the trust and who are represented in this proceeding by their special guardian. They will become owners of the trust corpus on death of their father if they survive him.
Testimony has been taken by stipulation, the parties agreeing that the court in its decision may make any ruling upon evidence that it deems necessary. The court has considered the testimony and exhibits. While certain evidence may be somewhat immaterial, the court is of the opinion that taken as a whole *549 the testimony and exhibits indicate a full disclosure of the corporate affairs and that no testimony or exhibits are prejudicial to any party. Accordingly none has been stricken from the record and the same has been considered in the light of its character, weight and pertinency. All objections to admission of evidence are considered as being overruled.
The objections of the income beneficiary, Allan, are that the individual trustee, Robert, because of his individual ownership of 700 shares (70%) of the stock of the corporation, was in control of the corporation; and that upon becoming a trustee of the trust for Allan he thereby acquired in his fiduciary capacity an additional 50 shares (5%) of the authorized stock, which placed him in a position of conflict of interest; that he should have caused the corporation to declare larger cash dividends so that the income beneficiary would have received more income on the annual market value of the corporate stock. That this is his contention is clear from the testimony: counsel stated: ‘ ‘ my principal concern and contention on behalf of Allan is that the dividends were not substantially * * * or not sufficient e * * and this is it in a nutshell * * * Let the record show that in so far as the objectant is concerned, it is not his contention that the stock is over-valued as an accounting matter * * * it is our contention that some of the surplus should have been distributed which would reduce the value of the stock.”
The income beneficiary also objected to the failure of the trustees to liquidate the Pinkerton stock so as to reinvest it so it would produce more income. However, this objection was specifically withdrawn, leaving the objectant, in the opinion of the court, in the position of fully acquiescing in the discretion of the trustees in the retention of the Pinkerton stock as an asset of the trust for the benefit of both the income beneficiary and the remaindermen throughout the accounting period.
The objectant alleges that the prime interest of the individual trustee has been to increase the value of the stock of Pinkerton’s Inc. at the expense of the income beneficiary and that by reason of his individual control ‘ ‘ he has caused the substantial earnings of the corporation to be reinvested in order to enhance the capital value of the stock and has failed and refused to utilize his corporate position to cause dividends to be declared on said stock commensurate with the company’s earnings and financial position.” The individual trustee, Robert, has at all times waived commissions on principal and income. He is not and never has been a beneficiary under the will.
*550 The accounts of Robert A. Pinkerton, as sole trustee, were last judicially settled by decree dated January 21, 1955 which covered the period to August 31, 1954. Robert continued to act as sole, trustee until February 24, 1955 when the president and directors of the Manhattan Company, now the Chase Manhattan Bank, was appointed as substitute trustee in place of Allan P. Carlisle (who failed to qualify upon an application for reinstatement) and since then the corporate trustee and the individual trustee have acted jointly.
The business now known as Pinkerton’s was founded in 1850. It passed through the forms of proprietorship, partnership and corporation. Robert A. Pinkerton, the nominated trustee and nephew of testatrix was president, chairman of the board, and the chief executive officer when testatrix died. He has continued to act as such through the accounting period. Proportionately, the stock in Allan’s trust was 50 shares, or 5% of the outstanding stock and the 700 shares owned by Robert individually represented 70% of the outstanding stock when decedent died and presently represents 75.67%; 75 shares having been repurchased by the corporation in 1962 which left 925 shares outstanding. Consequently, Robert, individually, had the controlling interest in the corporation at all times from prior to the date of death of testatrix, and the additional shares held under the will of testatrix in his fiduciary capacity did not give bim any control which he did not already have.
The original inventory value of the 50 shares of stock in Allan’s trust at the time of decedent’s death was $18,750. As of the opening date of his account, September 1, 1955, the value of such 50 shares as stipulated by counsel was $150,000 or $3,000 per share. At the closing date of this account, January 31, 1966, such 50 shares had a value of $968,300 or $19,366 per share. The parties agree that for purposes of this proceeding the market value at the end of the accounting period may be considered to be $20,000 per share.
Obviously, there has been an increase in the value of the shares held by Robert Pinkerton, individually, and a corresponding increase in the value of the shares held in trust. It is this fact which apparently persuades the objectant to contend that the trustee benefited to the detriment of the objectant as income-beneficiary. That Robert, because of his individual ownership of 70% plus of the stock of Pinkerton’s, Inc. has benefited from the growth of the corporation is obvious in the sense that- the worth of the stock has increased approximately sixfold in the 11-year period. The value of the stock held in trust has *551 increased in the same proportion. The amount of dividends paid has also increased during the same period. The cash dividends were at the rate of $85 per share in 1954 and at the rate of $275 per share in 1965. On the market value of the stock at the beginning of the accounting period of $3,000 per share, the dividend of $85 per share was a return of approximately 2.8%. On the same market value the dividend of $275 per share in 1965 represents a return of approximately 9.0%. On the agreed market value of $20,000 per share at the end of the period the last dividend is a return of approximately 1.4%. The object ant implies that this benefits the trustee individually to the detriment of the income beneficiary.
Pinkerton’s, Inc. has had a significant growth and development since 1954. The court concurs with the conclusion of the special guardian that this growth has been due in large measure to the highly capable management of Robert and his codirectors. There is no charge whatever of fraud. A full disclosure of the corporate affairs has been made, perhaps even beyond what might be legally required. The volume of business was $11,758,635.31 in 1954 and $57,235,601.37 in 1965 (excluding World’s Pair income). Thus, gross business during that period increased approximately sixfold. The cash dividends paid on the 50 shares of Pinkerton’s were $4,250 in 1954 and on all the outstanding shares $256,687 in 1965. The percentage of cash dividends paid to net earnings varied from 14.25% to 38.75%.
A considerable amount of testimony deals with the operations of the corporation, its borrowings, the amount of accounts receivable, the cash needs and other factors of management including expansion, maintaining a high credit rating and the like. This is in an effort to support a contention that the directors of the corporation, in their discretion, could have paid out a higher percentage of earnings in cash dividends, and that the corporation would still have grown and expanded as it did. That, of course, is a matter of judgment and hindsight on which opinions may differ. The conclusion of the court is that the directors were not rubber stamps but exercised their independent judgment in the interest of the corporation, and that the major stockholder, Robert, exercised at all times wise and prudent judgment in the management of corporate affairs. The court is of the opinion, that the directors in making distributions by way of cash dividends at all times were motivated primarily in the interests of the corporation as a whole. They considered all proper factors such as income, operating expenses, office expense, the financial statements, labor charges, the cash *552 requirements, experience based on past years ’ operations, needs of the business, needs for capital, amount of accounts receivable, amount of borrowings, taxes and anticipated profits.
The trust interest was a minority interest and there is no evidence that such minority interest would have had any substantial grounds for seeking judicial relief against the corporation to require it to pursue a dividend policy different from that which was pursued. For a court to give judicial relief concerning the internal affairs of a corporation it is necessary to establish that the acts of the directors are prejudicial to the interest of the corporation. Not only is there no showing of such a situation here, but on the contrary the management was such as to make the corporation quite successful. It may be that a different policy could have been followed and less cash retained for growth and a larger percentage of earnings be paid out in cash dividends, but whether that would have proven beneficial to the corporation or whether it would have hampered growth and damaged the financial position of the corporation is a matter on which one can speculate and upon which business judgment may differ.
The court is of the opinion that all directors exercised good, sound, independent business judgment, and that the results of retention of the stock of the trust in Pinkerton’s, Inc. have been beneficial both to the remaindermen and income beneficiary and have not been to the detriment of the latter in any legal sense. While the capital value of the corpus has increased so has the income to income beneficiary.
The objectant at the hearing made an application to supplement the objections filed to request a construction of the will to the effect that testatrix intended an apportionment of corporate earnings between income and principal, and that the difference between the dividends paid and 5% of the value of the stock of Pinkerton’s, Inc. computed annually should be charged to principal and credited to income. The request for such a construction is granted. On the question of the construction, however, the court finds nothing in the will to warrant the construction requested and accordingly the construction requested is dismissed on the merits.
Objectant contends that testatrix intended her son to be the primary object of her bounty and that the will can be construed to indicate her intent ‘1 that in the event of an excessive accumulation of net earnings in the family company, Pinkerton’s, Inc., an adjustment should be made between the income and principal account so as to provide that this beneficiary have an equitable annual return on his trust investment by allocating *553 to the income account a sum equal to the difference between the annual dividend paid, and 5% of the value of the stock as indicated in the annual report, charging such sum to principal on the 50 shares of stock. ’ ’
Referring to the will and to the construction suggested by objectant, testatrix gave her son, Allan, only the ‘ ‘ income ’ ’. A stockholder of a corporation does not receive income on stock until or unless the corporation declares a distribution. Whether or not a distribution is made is a matter to be determined only by the board of directors in their discretion. There is nothing in the language of the will whatever to indicate that testatrix in giving income meant other than income in its usual sense. It was fully within the power of testatrix, if she had so desired, to give her son a fixed amount in dollars, to authorize invasion of principal, to supplement income if it fell below a stated minimum, or to set forth other standards expressed in either amounts or percentages based on inventory or market value if she desired to give her son Allan more than “income ” construed in the ordinary sense of the word. It is just as reasonable to infer from the language of her will that she desired to benefit her grandchildren, hoping that the value of the corpus of the trust would increase, as it is to contend that she wished to sacrifice growth of corpus in favor of larger income.
In the context of prevailing economic and financial factors preservation of the value of principal for remaindermen justifies not only consideration of investment policies to maintain dollar value until the termination of the trust, but consideration of policies which tend to maintain purchasing power of the principal (see Central Hanover Bank & Trust Co. v. Brown, 30 N. Y. S. 2d 85 [1941].)
In the opinion of the court the testatrix, knowing that her nephew whom she named trustee owned individually 70% of the corporate stock, expected that he would follow such policy in managing the corporate affairs as he deemed would be best for the corporation as a whole. Objectant has inferred that if this corporation had been a public corporation it would have been the policy of the directors to pay out a larger percentage of earnings by way of cash dividends. That might or might not be. Numerous public corporations retain as high percentages of earnings, and in some cases a higher percentage, than has Pinkerton’s. In fact, investment advisors frequently advise investors to invest in so-called growth issues for tax and other advantages.
When the trust asset is in the form of corporate stock there is no “ income ” until a dividend has been declared. Whether *554 dividends shall be paid and the amount is a matter to be determined by the directors in their discretion. A court is not justified to interfere unless there is bad faith, fraud, a clear abuse of discretion, or dishonesty on the part of the directors. (Gordon v. Elliman, 306 N. Y. 456; Matter of Lander, 162 Misc. 201 [1937].)
The court is mindful of the duty of a trustee to exercise prudent judgment in retention of nonlegals although retention is authorized and of a duty to preserve corpus, produce income and be prepared for eventual distribution. (Matter of Flint, 240 App. Div. 217, affd. 266 N. Y. 607 [1935].) But the trust asset here of corporate stock is not unproductive and does not fall within the situations of unproductive trust assets where an intent to apportion proceeds between income and principal is found. (Cf. Matter of Pennock, 285 N. Y. 475 [1941].) Even in situations of unproductive assets it has been held that there cannot be an anticipatory or prospective allocation of income to an income beneficiary of the unrealized proceeds of a prospective sale (Matter of Winthrop, 168 Misc. 861 [1938].)
The situation here is not similar to that found in Matter of Hubbell (302 N. Y. 246 [1951]) where the trustee caused the corporation to redeem only stock which the trustee held as fiduciary thereby reducing the proportionate interest of the trust and increasing the individual interest of the trustee at the expense of the trust.
In this case the trustee is not a beneficiary. All shares have equally increased in value and all have equally received dividends. The income beneficiary does not object to retention of the Pinkerton stock in the trust. What he really seeks is to control the operation of the corporation to make it declare larger dividends. He wants larger dividends in the future, and he wants to be paid other sums by means of an allocation from principal to income to make up for so-called insufficient dividends during the accounting period. In the absence of any provision in the will giving the income beneficiary more than the income of the trust, does he have a right to require an apportionment from principal to income of a part of the value of stock held in the trust on which he believes the yield is too low when the testatrix authorized retention and he acquiesced in retention?
The court finds no basis either under the terms of the will or in decision law to make any apportionment of principal to income under the facts present here. Counsel indicate that the issue presented is unique. A somewhat similar question was considered in Matter of Sheridan (32 Misc 2d 38 [1961].) There, however, the low-yield stock had been sold. Apportionment was denied on the ground that the cotrustee beneficiary *555 acquiesced in retention and hence was estopped to assert any violation of duty (the court did not find that there was any such duty) on the part of the trustee. The court also construed the will as not giving the beneficiary any interest except in income and stated that no intent to give the income beneficiary part of the proceeds of sale of the stock would be implied when what was really sought was an adjustment because the yield had been low.
Accordingly, the objections are dismissed. The account may be settled as filed.