*In re* BUTTERFIELD ESTATE

GOWTHORPE v PAGE

Docket No. 67826. Argued June 8, 1983 (Calendar No. 16).—Decided December 20, 1983.

Montague F. Gowthorpe and the other trustees of a trust established in 1936 by the will of Walter S. Butterfield, deceased, for the benefit of his wife and children petitioned the Calhoun County Probate Court for approval of their 37th annual account. The principal asset of the trust is 100% of the stock of Bijou Theatrical Enterprise Company, which holds a majority of the shares of W. S. Butterfield Theatres, Inc., and Butterfield Michigan Theatres Company, the "operating companies". Jesse W. Page, III, and other beneficiaries objected to the account. The court, Wendell L. Schoder, J., approved the account, but required the trustees to justify any retention by the operating companies in excess of 25% of their net income after August 4, 1978. The Court of Appeals, R. B. Burns, P.J., and Allen and Gillespie, JJ., consolidated appeals regarding the 37th to 40th annual accounts and affirmed the decisions of the probate court, but changed the effective date of the 25% order to January 1, 1976 (Docket Nos. 46366, 49743-49745). The trustees appeal, asserting that a probate court does not have the authority to determine and order the amounts of dividends to be paid by corporations in which a majority interest is owned by a corporation wholly owned by a trust.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Brickley and Cavanagh, the Supreme Court *held:*

The probate court has jurisdiction to determine and order the amounts of dividends to be paid by corporations in which the majority interests are owned by a corporation wholly owned by

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4–7] 19 Am Jur 2d, Corporations § 901 *et seq.*
  20 Am Jur 2d, Courts § 104.
  76 Am Jur 2d, Trusts § 281.
[3] 76 Am Jur 2d, Trusts § 279 *et seq.*

a testamentary trust. However, the circumstances of this case do not support the exercise of such jurisdiction.

1. The probate court has exclusive jurisdiction over the administration of trusts and may instruct trustees. In this case, the probate court instructed the trustees of a testamentary trust, properly before the court, with respect to their duties as trustees. The fact that the trustees were also directors of a corporation wholly owned by the trust does not permit the court's order to be characterized as an order to corporate directors requiring them to declare dividends. The trustees cannot insulate themselves from the scrutiny of the probate court under the guise of calling themselves corporate directors who are exercising their business judgment concerning matters of corporate policy.

2. A court should be most reluctant to interfere with the business judgment and discretion of corporate directors in the conduct of corporate affairs. In the absence of bad faith or fraud, a court should not substitute its judgment for that of the directors with respect to dividend policies. Interference with the judgment of the directors is not justified by allegations that a different policy could have been followed. However, where a board's refusal to declare a dividend constitutes a breach of its fiduciary duty to the shareholders, there is ground for intervention by the court.

3. A trustee is bound to execute a trust faithfully in behalf of the *cestui que trust*. The trustee must be impartial in investment policies. Neither income beneficiaries nor remaindermen may be favored. All trust beneficiaries must be dealt with impartially, unless a different intent is clearly expressed in the trust document. Before a court may intervene in the administration of a trust, it must be shown that the trustee has violated his fiduciary duty.

4. Where, as in this case, the trustees also serve as corporate directors, there is a potential conflict between the duties owed the corporation and those owed the *cestui que trust*. In determining whether to intervene, a court must consider the rights and interests of the creditors and shareholders of the corporation and the *cestui que trust* and the duties of the trustees-directors to each. Where a corporation is wholly owned by a trust and directly holds and controls all of its own assets, courts are less reluctant to ignore the corporate entity and to consider the corporation to be an adjunct of the trust. However, due consideration must be given to the settlor's intent in each case as expressed in the trust instrument with respect to the

purpose of the trust and its operation and the powers and duties of the trustees.

5. In this case, the settlor gave the trustees clear authority to continue to operate his theater business and broad discretion to determine the net annual income of the trust. Primary emphasis in the trust instrument was placed on the maintenance and continuance of the trust corpus. Thus, the Supreme Court declines to interfere with the operation of the trust, no findings of fact having been made which would support the beneficiaries' contention that the trustees breached their fiduciary duties by accumulation of excessive retained earnings.

Reversed.

Justice Kavanagh, joined by Justices Levin and Ryan, did not agree that a probate court has jurisdiction to determine and order the amounts of dividends to be paid by a corporation in which interests are owned by a corporation wholly owned by a testamentary trust. The statute which gives the probate court the plenary powers of a court of equity in matters properly before it quite clearly addresses only the powers of the probate court, and does not purport to, nor should it be read to, affect the extent of that court's jurisdiction. While the probate court has plenary powers to deal with the administration of a trust and to regulate the conduct of trustees, where, as in this case, the trustees are also directors of a corporation wholly owned by the trust, the jurisdiction of the probate court is not increased. The court may remove the trustees from their offices as trustees or direct them to dispose of the stock in the corporations, but it may not order them as directors of a corporation to declare dividends.

Justice Levin, writing separately, noted that the Court's decision that the evidence presented does not support the decision of the probate court, with which he agreed, made it unnecessary to decide whether an action may be maintained in the probate court to instruct the trustees to cause a declaration of increased dividends, and, if so, what standard governs the conduct of directors. The observations in the opinion of the Court concerning the standards that govern the conduct of trustees and directors, while not necessary to decision, might be read as representing the views of the entire Court unless a response was made. He agreed with Justice Kavanagh that the probate court is not authorized to instruct directors of a corporation how to discharge their duties as directors even where the directors are trustees subject to instruction by the probate court.

He wrote separately to add that fiduciaries who are autho-

rized to invest in the capital stock of a corporation and who choose to elect themselves as directors do not seek to insulate themselves from probate scrutiny under the guise of calling themselves corporate directors. Rather, they have exercised their powers to incorporate or to continue investment in the capital stock of the corporation and to vote the stock. They would be acting under a guise only if they were not authorized to incorporate or so invest in capital stock.

The opinion of the Court recognizes that there is a potential for conflict between the duty owed by a trustee to the beneficiaries of a trust and the duty owed by a director to the stockholders of a corporation, but leaves in doubt whether the trustee or director standard would govern in a particular case. It leaves open the possibility that the judgment of directors regarding the needs of a business may not be accorded the usual deference where the capital stock of the corporation is owned by a trust if the action of the directors is thought to conflict with the perceived intent of the settlor. This ignores the fact that in authorizing investment and continuation of investment in corporate stock a settlor evidences his intent to subject the principal of the trust to the needs of the business as determined by the directors. Directors, albeit also trustees, are required by the statutes and rules of law governing corporations to act as directors, not as trustees, and to exercise judgment by a standard different from that governing trustees. The standard which governs the conduct of directors of a corporation does not depend on who owns its capital stock.

A probate court has certain powers over trustees in a proper case, but it cannot properly instruct directors of a corporation how they shall discharge their responsibilities as directors, even if the directors are trustees owning a majority of the capital stock of the corporation.

108 Mich App 363; 310 NW2d 381 (1981) reversed.

### Opinion of the Court

1. Courts — Jurisdiction — Probate Courts — Trusts — Corporations.

    A probate court has jurisdiction to determine and order the amounts of dividends to be paid by corporations in which the majority interests are owned by a corporation wholly owned by a testamentary trust (MCL 600.847; MSA 27A.847).

2. Corporations — Dividends — Discretion.

    A court should not substitute its judgment for that of the directors of a corporation with respect to dividend policies; however,

where a board's refusal to declare a dividend constitutes a breach of its fiduciary duty to the stockholders, there is ground for intervention.

3. TRUSTS — ADMINISTRATION.

Investment of a trust corpus must be impartial, favoring neither the income beneficiaries nor the remaindermen unless a different intent is clearly expressed in the trust document, and a court will not intervene in the administration of a trust absent a showing that the trustee has violated a fiduciary duty.

4. COURTS — JURISDICTION — PROBATE COURTS — TRUSTS — CORPORATIONS.

The jurisdiction of a probate court to determine and order the amounts of dividends to be paid by corporations in which the majority interests were owned by a testamentary trust should not have been exercised where the settlor gave the trustees broad discretion to determine the net annual income of the trust, primary emphasis in the trust instrument was placed on the maintenance and continuance of the trust corpus, and no findings of fact were made which would support the contention by the beneficiaries that the trustees had breached their fiduciary duty by the accumulation of excessive retained earnings.

OPINION BY KAVANAGH, J.

5. COURTS — JURISDICTION — PROBATE COURTS — TRUSTS — CORPORATIONS.

*A probate court does not have the jurisdiction to determine the amounts of dividends to be paid by a corporation in which interests are owned by a corporation wholly owned by a testamentary trust whose directors also serve as trustees, or to order the trustees in their capacity as directors of the corporation to pay the dividends (MCL 600.847; MSA 27A.847).*

OPINION BY LEVIN, J.

6. TRUSTS — CORPORATIONS — TRUSTEES — DIRECTORS — PROBATE COURTS.

*Trustees who are authorized by the settlor to invest in the capital stock of a corporation and own sufficient stock to elect directors and who choose to elect themselves as directors do not insulate themselves from probate scrutiny under the guise of calling themselves corporate directors; if the investment is valid, the trustees, when acting as directors, are governed by rules of law pertaining to corporations and are required to exercise judgment by a standard different from that governing trustees.*

7. TRUSTS — CORPORATIONS — TRUSTEES — DIRECTORS — PROBATE
   COURTS.

   *A probate court has certain powers over trustees in a proper case,
   but it cannot instruct directors of a corporation how they shall
   discharge their responsibilities as directors, even if the direc-
   tors are trustees owning a majority of the capital stock of the
   corporation; the standard that governs the exercise of discre-
   tion with respect to the declaration of dividends of a corpora-
   tion does not vary depending on whether the directors were
   elected by the votes of stockholders who are trustees or by the
   votes of other stockholders.*

*Dickinson, Wright, Moon, Van Dusen & Free-
man* (by *Douglas D. Roche, Richard J. Meyers,* and
*Richard A. Wilhelm)* for the trustees.

*Landman, Luyendyk, Latimer, Clink & Robb* (by
*Jon D. Vander Ploeg* and *J. William Whitlock)* for
the beneficiaries.

BOYLE, J. The issues presented in this action are
whether a probate court has jurisdiction to deter-
mine and order the amounts of dividends to be
paid by corporations in which the majority inter-
ests are owned by a corporation wholly owned by a
testamentary trust, and, if the probate court has
such jurisdiction, whether the evidence presented
in this case supports the exercise of such jurisdic-
tion.

## FACTS

The testator, Walter S. Butterfield, died in 1936.
Under the provisions of his will, the residue of his
estate was left to four named trustees with the
direction that they pay 30% of the net income of
the trust to his surviving widow and the remain-
der of the net income in equal shares to his
children. If a child died before the termination of
the trust, the income from his or her share was to

be divided among the issue[1] of such child and paid accordingly.

The trust will terminate upon the death of all of Mr. Butterfield's children. The remaining trust property will then be divided equally among Mr. Butterfield's grandchildren who are living at that time. At the time of Mr. Butterfield's death, he had six children. Only one child is still living, and Mr. Butterfield's widow died in 1977. Each deceased child left surviving issue.

The principal asset of the trust is 100% of the stock of Bijou Theatrical Enterprise Company, a Michigan corporation and a personal holding company. The assets of Bijou consist largely of real estate and securities. This case concerns Bijou's major assets: 74.2% of the outstanding shares of W. S. Butterfield Theatres, Inc., and 66-2/3% of the outstanding shares of Butterfield Michigan Theatres Company, together referred to as the "operating companies". The operating companies are involved almost exclusively in the motion picture theater business. During all periods of time relevant to this proceeding, the minority shareholder of the operating companies was the University of Michigan.

The Butterfield trust is administered by one corporate and three individual trustees, the defendants-appellants in this action. Mr. Butterfield's will directed that one of the trustees be experienced in the theater business (Mr. Gowthorpe)[2] and that two be attorneys (Messrs. Van Dusen and Gushee). The trustees are directors of Bijou and

[1] In *In re Butterfield Estate (Gowthorpe v Goodwin)*, 405 Mich 702; 275 NW2d 262 (1979), this Court interpreted the will as to the meaning of "issue" in this context and held that the testator's great-grandchildren are "issue" entitled to the parent's share of the income.

[2] Mr. Gowthorpe, the long-time president and general manager of the operating companies, died in 1979.

the operating companies. Two members of the
Board of Regents of the University of Michigan
served on the board of directors of the operating
companies during all times relevant to this case.

In April, 1976, the trustees petitioned the pro-
bate court for approval of their 37th annual ac-
count, covering 1975. Certain of the income benefi-
ciaries and contingent remaindermen[3] filed objec-
tions to this account. The principal objecting bene-
ficiary is Jesse W. Page, III, who is one of the 17
surviving grandchildren and, thus, a remainder-
man under the trust. When Mr. Page's mother
died in 1969, he also became entitled to receive
income during the term of the trust.

The objections to the account alleged that it
should be disallowed because: (1) it did not contain
detailed financial reports regarding Bijou and the
operating companies, (2) the trust's exclusive in-
vestment in the theater business was improper
and should be diversified, and (3) the matter that
is critical to the present appeal, the accumulated
retained earnings of the operating companies were
excessive.[4] Mr. Page also petitioned for the re-
moval of Mr. Gowthorpe as a trustee.

An evidentiary hearing was held on October 25,
1976. The probate judge entered findings on Au-
gust 4, 1978, clarified by an order dated August 31,
1978, which rejected most of the objections, but
concluded that the trustees may have given insuffi-

---

[3] The income beneficiaries so joining in the objections were Julia S.
Leonard (now deceased), Anne Handley Stack, Laura P. Frech, Mi-
chael K. Page, Melinda P. Randolph, Barbara A. Robinson, James B.
Allen, Paul A. Berry, Jr., and Susan Lee Berry. The contingent
remaindermen joining in the objections were Timothy B. Leonard,
Anthony B. Leonard, Susan L. White, and Drew M. Handley. Neither
the decedent's widow nor Caroline L. McDonald, the only child of the
decedent's daughter, Mitties L. Rathburn, joined in the objections.

[4] Objections to the 38th, 39th, and 40th accounts, covering 1976,
1977, and 1978 were similar.

cient attention to generating earnings to the benefit of the income beneficiaries. After further proceedings, an order pursuant to these findings was entered on July 16, 1979. The order approved the account and denied removal of Mr. Gowthorpe, but stated the following:

"4. The allowance of this account is not an indication of the court's approval of the manner in which the trustees currently exercised their discretion as to the conduct of the business entities under their control. As such, the allowance of the account neither expressly nor by implication mitigates the finding that the trustees must justify in the future any retention in excess of 25% of the net income of the so-called operating companies.

"5. The prayer of the objectors for an order directing the trustees to cause distributions of earnings of W. S. Butterfield Theatres, Incorporated, and Butterfield Michigan Theatres Company accumulated prior to August 4, 1978, is denied.

"6. The court's order contained in the second sentence of paragraph 4 of this order is applicable to earnings of W. S. Butterfield Theatres, Incorporated, and Butterfield Michigan Theatres Company retained after August 4, 1978."[5]

The trustees appealed, and the beneficiaries filed a cross appeal. The Court of Appeals, *sua sponte,* directed the parties to brief the question whether the probate judge's order was a "final" one appealable to the Court of Appeals under MCL 600.861; MSA 27A.861, as amended by 1978 PA 543, effective July 1, 1979. The Court of Appeals concluded that it lacked jurisdiction of the appeal by the trustees, but that it could hear the appeal by the

[5] Apparently, the judge's theory in choosing August 4, 1978, was that it was on that date that the trustees first became aware that they were subject to a rule requiring them to justify retaining more than 25% of net earnings.

beneficiaries.[6] The trustees were advised that the decision was without prejudice to their right to file an application for leave to appeal to the circuit court. *In re Butterfield Estate,* 100 Mich App 657; 300 NW2d 359 (1980).

In the meantime, the trustees kept filing annual accounts. They petitioned for approval of the 38th (1976), 39th (1977), and 40th (1978) annual accounts. Hearings were held in July and August of 1979. The principal question contested regarding these accounts was whether the probate judge should delay decision until determination by the Court of Appeals of the issues raised by the 37th account. The probate judge decided not to await action by the Court of Appeals and, on January 15, 1980, approved the 38th, 39th, and 40th accounts. The order did not deal with the 25% rule to which the 40th account (1978) would have been subject.

The beneficiaries appealed, and the Court of Appeals consolidated the appeals regarding the 37th to 40th accounts. The Court affirmed the probate judge in all respects except one. The effective date of the 75%-25% dividend/retained-earnings rule was changed from August 4, 1978, to January 1, 1976, the first day of the year covered by the 38th annual account. 108 Mich App 363; 310 NW2d 381 (1981). This Court granted the trustees' application for leave to appeal. 414 Mich 873 (1982).

I

The trustees claim that a Michigan probate court does not have the authority to determine and order the amounts of dividends to be paid by

---

[6] See PCR 801.

corporations in which a majority interest is owned by a corporation wholly owned by a trust.

The probate court of Michigan derives its existence from constitutional mandate. Const 1963, art 6, § 1. Article 6, § 15 provides that the probate court's jurisdiction, powers, and duties shall be provided by law.

The jurisdiction and power of the probate court is set forth in MCL 600.841; MSA 27A.841 as follows:

"The probate court has jurisdiction and power as follows:

"(a) As conferred upon it under the revised probate code.

"(b) As conferred upon it under chapters 10, 11 and 12a of Act No. 288 of the Public Acts of 1939, as amended, being sections 710.21 to 712a.28 of the Michigan Compiled Laws.

"(c) As conferred upon it under Act No. 258 of the Public Acts of 1974, as amended, being sections 330.1001 to 330.2106 of the Michigan Compiled Laws.

"(d) As conferred upon it under this act.

"(e) As conferred upon it pursuant to any other law or compact."

The Revised Probate Code vests the probate court with exclusive jurisdiction to, *inter alia,*

"Determine any question arising in the administration or distribution of any trust, including questions of construction of wills and trusts; *instruct trustees,* and determine relative thereto the existence or nonexistence of an immunity, power, privilege, duty, or right." (Emphasis added.) MCL 700.21(c)(v); MSA 27.5021(c)(v).

Along with the adoption of the Revised Probate Code, the Legislature adopted a complementary

bill amending the Revised Judicature Act which added the following section:

"In the exercise of jurisdiction vested in the probate court by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions." MCL 600.847; MSA 27A.847.

This section went into effect on July 1, 1979, before the probate court order in question was entered on July 16, 1979.

The trustees assert that a Michigan probate court lacks authority to directly order a corporate distribution of dividends. However, that is not a correct characterization of the probate judge's order herein. This was not an order to corporate directors requiring them to declare dividends. Rather, it was an order to the trustees of a testamentary trust which was properly before the probate court *instructing* the trustees with respect to their proper duties as trustees. The probate judge stated in his August 4, 1978 findings:

"This court does not presume authority over the directors of corporations. This court does assume authority over an abuse of discretion of trustees of an estate under its jurisdiction."

The probate court has exclusive jurisdiction over the administration of trusts and may instruct trustees. Trustees who also happen to be directors of the corporation which is owned or controlled by the trust cannot insulate themselves from probate scrutiny under the guise of calling themselves corporate directors who are exercising their business judgment concerning matters of corporate

policy. To allow them to do so would inhibit the probate court's duty to supervise a testamentary trust.

## II

Having determined that the probate judge had the authority to determine and order the amounts of dividends to be paid, we must next determine whether, on the facts of this case, it was proper for him to do so. This requires a closer examination of the trust.

Bijou is wholly owned by the trust. Bijou's major assets are the controlling interest in Butterfield Theatres and Butterfield Michigan Theatres, the operating companies. Although all three companies are Michigan corporations, Bijou is a holding company, while the operating companies are ongoing businesses.

The trustees are directors of both Bijou and the operating companies. Two members of the operating companies' boards of directors represent the interest of the minority shareholder of these companies, the University of Michigan. However, by virtue of its ability to elect the majority of directors on each of these boards, control of the operating companies is held by Bijou, in effect, the trustees.

The beneficiaries allege that excessive retained earnings have been accumulated by the operating companies. The beneficiaries claim that these earnings should be paid out in higher dividends to the shareholders.[7] Since the majority shareholder of the operating companies is Bijou, this would result in higher payments to the income beneficia-

---

[7] From 1951 to 1975, the average percent of net income which was declared as dividends was 58.7% for Butterfield Theatres, 84.5% for Butterfield Michigan Theatres, and 89.8% for Bijou.

ries. The excessive retention of earnings, claim the beneficiaries, has resulted in the trustees' breach of their duty to remain impartial to the income beneficiaries and the remaindermen of the trust. The beneficiaries allege, therefore, that the lower court correctly held that the trustees, in their capacities as directors of the operating companies, were required to declare higher dividends.

The trustees contend that the retained earnings of the operating companies are not excessive and that the beneficiaries have failed to prove otherwise. The trustees further claim that no proof has been offered to support the beneficiaries' allegation that the trustees have breached their fiduciary duty to the *cestui que trust.* The trustees thus conclude that any judicial interference with the discretionary powers of the trustees in their capacities as both trustees and directors cannot be justified.

An examination of the legal duties regarding the declaration and payment of dividends which directors owe to a corporation, the duties which trustees owe to income beneficiaries and remaindermen, and the interrelationship of these duties is necessary.

Michigan's Business Corporation Act states that a director "shall discharge the duties of his position in good faith and with that degree of diligence, care and skill which an ordinarily prudent man would exercise under similar circumstances in a like position". MCL 450.1541(1); MSA 21.200(541)(1). It is by action of its board that a corporation may declare and pay dividends. MCL 450.1351; MSA 21.200(351).

In *Hunter v Roberts, Throp & Co,* 83 Mich 63, 71; 47 NW 131 (1890), this Court stated:

"It is a well-recognized principle of law that the

directors of a corporation, and they alone, have the power to declare a dividend of the earnings of the corporation, and to determine its amount. 5 Amer & Eng Enc Law, 725. Courts of equity will not interfere in the management of the directors unless it is clearly made to appear that they are guilty of fraud or misappropriation of the corporate funds, or refuse to declare a dividend when the corporation has a surplus of net profits which it can, without detriment to its business, divide among its stockholders, and when a refusal to do so would amount to such an abuse of discretion as would constitute a fraud, or breach of that good faith which they are bound to exercise towards the stockholders."

See also *United States v Byrum,* 408 US 125, 140; 92 S Ct 2382; 33 L Ed 2d 238 (1972); *Dodge v Ford Motor Co,* 204 Mich 459, 500-502; 170 NW 668 (1919).

In the absence of bad faith or fraud, a court should not substitute its judgment for that of corporate directors concerning dividend policies. As explained by the Kansas Court of Appeals in *Jennings v Speaker,* 1 Kan App 2d 610, 615; 571 P2d 358 (1977):

"[D]irectors are in a far better position than a judge to evaluate such a corporation's needs and problems concerning cash needs for payroll, inventory, long and short term financing, improvements and expansion, contingencies, and the like. Common business prudence nearly always requires that some portion of current earnings be retained in the coffers of an operating business, rather than be distributed as dividends."

A court should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs. However, when a board's refusal to declare a dividend constitutes a breach of its fiduciary duty to the shareholders, this amounts to a breach of trust and is

ground for court intervention. *Reed v Burton,* 344 Mich 126, 131; 73 NW2d 333 (1955).[8]

We next examine the duty which a trustee owes to the income beneficiaries and remaindermen of a trust.

The standard of care and performance by a trustee is stated in MCL 700.813; MSA 27.5813 as follows:

"Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills."

It is axiomatic that a trustee is bound to execute a trust faithfully on behalf of the *cestui que trust.* This duty was eloquently stated by Judge Benjamin Cardozo in *Meinhard v Salmon,* 249 NY 458, 464; 164 NE 545 (1928), and adopted by this Court in the case of *In re Culhane Estate,* 269 Mich 68, 76; 256 NW 807 (1934):

" 'Many forms of conduct permissible in the workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrat-

[8] See also *Barrows v J N Fauver Co,* 280 Mich 553, 558-559; 274 NW 325 (1937); *Wagner Electric Corp v Hydraulic Brake Co,* 269 Mich 560, 566-567; 257 NW 884 (1934); *Thompson v Walker,* 253 Mich 126, 134-135; 234 NW 144 (1931); *Miller v Magline, Inc,* 76 Mich App 284, 302-306; 256 NW2d 761 (1977).

ing erosion" of particular exceptions. * * * Only thus
has the level of conduct for fiduciaries been kept at a
level higher than that trodden by the crowd. It will not
consciously be lowered by any judgment of this court.' "[9]

Another duty of trustees is to be impartial in
their investment policies. Neither income benefi-
ciaries nor remaindermen may be favored. All
trust beneficiaries must be dealt with impartially
unless a different intent is clearly expressed in the
trust document. See *In re Toulmin Estate,* 462 F2d
978, 981 (CA 6, 1972); *Copley v Copley,* 126 Cal
App 3d 248; 178 Cal Rptr 842 (1981); *DuPont v
Delaware Trust Co,* 320 A2d 694 (Del, 1974); *In the
Matter of Siegel Estate,* 44 Misc 2d 668; 254
NYS2d 780 (1964).

Before the court will intervene in the adminis-
tration of a trust, it must be shown that the
trustee has violated his fiduciary duty to the *cestui
que trust. Grigg v Hanna,* 283 Mich 443; 278 NW
125 (1938).

When, as in the case at bar, the trustees also
serve as corporate directors, a potential conflict is
presented between the duties owed to the corpora-
tion and to the *cestui que trust.*[10] This situation
combines both the law of corporations and the law
of trust administration. The rights and interests of
the creditors and shareholders of the corporation
and the *cestui que trust,* as well as the trustees-
directors' duties to each, must be considered. See
*In re Koffend Will,* 218 Minn 206; 15 NW2d 590
(1944).

In those situations where a corporation is wholly

[9] See also *Hertz v Miklowski,* 326 Mich 697, 700; 40 NW2d 452
(1950); *In re Buhl Estate,* 211 Mich 124; 178 NW 651 (1920); *Cham-
bers v Chambers,* 207 Mich 129, 136; 173 NW 367 (1919).

[10] A direct conflict of interest is not presented by this dual capacity
because none of the trustees is either an income beneficiary or a
remainderman. *Cf. Jennings, supra,* 1 Kan App 2d 616-617.

owned by the trust and directly holds and controls all of the corporation's assets, courts are less reluctant to ignore the corporate entity and to consider the corporation, which is usually a holding company, an adjunct of the trust.[11] However, each case must be evaluated on its own facts with due consideration given to the settlor's intent, *i.e.,* was the corporation formed during his lifetime with direction in the trust document that it be continued?

In the case of *In the Matter of Schnur Estate,* 39 Misc 2d 880, 887-888; 242 NYS2d 126 (1963), the Surrogate's Court held that the evidence failed to show that trustees and directors of a corporation wholly owned by a testamentary trust should have declared dividends claimed by a beneficiary. As in the case at bar, the beneficiary asserted that the trustees-directors were reinvesting monies which should have been distributed as income. The income beneficiary urged the court to disregard the corporate entity and to compel the distribution of retained earnings. On the record presented, the court overruled the income beneficiary's objections and explained:

" 'The function of an estate corporation is not to build up equity but to preserve a productive asset intact. Consequently, although trustee-directors have the power to establish suitable reserves out of income, they should exercise that power with considerable caution. This much is clear—that the income of the corporation is not income of the trust. It may become income of the trust upon the declaration of dividends. Even when that takes place, the dividends paid may be required to be apportioned between principal and income. The most

---

[11] See, *e.g., In the Matter of Shehan,* 285 App Div 785; 141 NYS2d 439 (1955); *In the Matter of McLaughlin Estate,* 164 Misc 539; 299 NYS 559 (1937); *In the Matter of Adler Estate,* 164 Misc 544; 299 NYS 542 (1937).

that can be said on the part of those who contend for the disregard of the corporate entity is that the trustee-directors may be instructed to declare dividends where failure to do so would render the testamentary scheme nugatory. In essence this is simply a particular and somewhat intensified application of the general rule that directors may not arbitrarily refuse to declare dividends.' * * *

"Although the declaration of dividends is generally a business matter resting in the sound discretion of the directors of a corporation, a stockholder is not without protection from the courts. 'A court of equity will protect a minority stockholder against conduct of the directors which is in breach of the trust confided in them and injurious to the stockholders, but on questions of expediency the courts cannot assume to pass. * * * The courts can, and in a proper case will, compel the trustees to observe the obligations of fiduciary relationship which the law imposes on them. Bad faith, fraud or other breach of trust are grounds for equitable relief. * * * In particular, if the directors refuse needlessly and improperly to divide what are actually surplus profits, the stockholders have an adequate remedy.' * * * Where rights of other stockholders or of creditors of the corporation are involved, a court may be more hesitant to intervene. But where control of the corporation is vested in a trustee and no other interests are involved except those of the respective trust beneficiaries, a court will more readily act to prevent the trustee from exercising his power in a way that is inconsistent with or contrary to the terms of the trust instrument. * * * Even in such a case, however, the court should overrule the decision of the directors only where it clearly appears that their action was not justified in the exercise of a reasonable discretion or was contrary to the terms of the trust."

The law is well established that one must look to the trust instrument to determine the powers and duties of the trustees and the settlor's intent regarding the purpose of the trust's creation and its operation. See *In re Mendelson Estate,* 391

Mich 706, 710; 220 NW2d 33 (1974); *In the Matter of Ruggles Estate,* 275 Mich 237; 266 NW 332 (1936); *Heald v Michigan Trust Co,* 274 Mich 225; 264 NW 351 (1936).

At the time of his death, Mr. Butterfield possessed an extensive theater business. His will contained no instructions to wind up and liquidate this business. Rather, the trustees were authorized to continue to operate the theater business. Paragraph 24 of Mr. Butterfield's will provides in part:

"The powers herein granted to said trustees are not limited by, in any way, but it is my intention they shall expressly include the power to manage, care for, improve, protect, control, deal with and operate all of the said property herein bequeathed and devised to said trustees in the discretion of said trustees in any way in which I could have managed, cared for, improved, protected, controlled, dealt with or operated the same, if living".

In addition to these grants of authority, Mr. Butterfield directed that one of the trustees should be an individual who was experienced in the theater business. Paragraph 24 of the will also provided that

"[a]ll of said trustees must consent in writing to the sale or purchase of securities, properties or assets of any kind whatsoever and no sale or purchase or investment of any part of said trust fund shall be consummated without the unanimous consent in writing of all said trustees."

Although Mr. Butterfield did not indicate that the theater business had to be maintained throughout the duration of the trust, the trustees were given clear authority to remain in the theater business. The trustees were also given broad

discretion to determine the net annual income of
the trust. Paragraph 31 of the will provides in
part:

"I further direct that the finding or determination of
said trustees as to the net income each year shall be
final, and I further direct that my said trustees shall
resolve all doubtful questions as to what constitutes net
income in favor of maintaining and continuing the
principal of this trust fund intact."

It is clear from the above directive that Mr. But-
terfield placed primary emphasis on the mainte-
nance and continuance of the trust corpus.

It is the beneficiaries' contention that the trust-
ees have abused their discretion by placing undue
emphasis on the maintenance and continuance of
the trust principal to the detriment of the income
beneficiaries. The trustees contend that the main-
tenance of a strong working capital position in the
operating companies is supported by sound busi-
ness reasons. The trustees further contend that
because the operating companies are ongoing busi-
nesses which are not wholly owned by the trust
their separate corporate existence must be recog-
nized and that judicial intervention with respect to
the amount of corporate retained earnings is not
justified in the absence of bad faith, willful ne-
glect, or abuse of discretion.

Given Mr. Butterfield's intent that the trust
principal be maintained and that the trustees be
given broad discretion, this Court would decline to
interfere with the operation of this trust, absent
proof that the trustees have breached their fidu-
ciary duty to the *cestui que trust* by the accumula-
tion of excessive retained earnings.

Whether retained earnings are excessive cannot
be determined in the abstract. Rather, a compari-

son of the level of retained earnings to the factual needs of the businesses must be made. Throughout this litigation the beneficiaries have made conclusory allegations that excessive amounts of earnings have been retained by the corporations. They have never demonstrated why they allege that the amounts of retained earnings are unreasonable with respect to the financial needs of the corporations nor have they indicated what amount they believe would be reasonable. In his August 31, 1978, clarification of findings, the probate judge stated that:

"[T]he court does not find that there has been any specifically determinable unwarranted accumulation to the date of the findings. The court's findings are, and it was intended to clearly state, that the evidence indicated that the *continuance* of the accumulations can not be justified. It is the intention of this court that the suggested policy concerning future accumulations is to become effective now and not on any date prior to August 4, 1978."

There were no findings of fact to support the beneficiaries' contention that accumulations of retained earnings were so excessive as to amount to a breach of fiduciary duty by the trustees.

The Court of Appeals stated as follows:

"It is evident from the record that the trustees (directors) have retained an excessive amount of income for the advancement of the business, to the detriment of the beneficiaries. Such actions thwart the intention of the testator." 108 Mich App 370.

The Court also applied the 75%-25% retention rule retroactively to January 1, 1976. Again, there were no specific articulable facts on which to base such a finding.

The beneficiaries have never indicated how much of the retained earnings they believe to be excessive. Neither have they presented financial or business facts to support their contention. Such proofs must be offered before judicial interference with the business judgment of corporate directors would be justified.

When the trust principal is in the form of corporate stocks there is no income until a dividend has been declared. Whether dividends should be paid and if so in what amount is a matter to be determined by the directors in their discretion. "A court is not justified to interfere unless there is bad faith, fraud, a clear abuse of discretion, or dishonesty on the part of the directors." *In the Matter of Carlisle Estate,* 53 Misc 2d 546, 554; 278 NYS2d 1011 (1967). See also *Long v Rike,* 50 F2d 124 (CA 7, 1931); *Cashman v Petrie,* 14 NY2d 426; 252 NYS2d 447; 201 NE2d 24 (1964); *In the Matter of Shupack Estate,* 1 App Div 2d 841, 843; 149 NYS2d 20 (1956).

Interference with the business judgment of corporate directors is not justified by allegations that a different policy could have been followed. Whether larger amounts of dividends could have been paid without damage to the financial positions of the corporations is a matter upon which business judgment may differ. Without specific proof which would amount to a showing of a breach of fiduciary duty, such allegations are speculative and do not support judicial intervention.

Without citation of financial facts or legal authority and without a showing of past unwarranted accumulations, the lower courts imposed a rigid dividend policy upon the trustees-directors. The burden was placed on the trustees-directors to persuade the court that deviations from the court-

established dividend policy should be permitted. This ability to seek relief from the probate court, as circumstances require, does not justify the initial imposition of the court-established dividend policy, absent proof of excessive retained earnings amounting to a breach of fiduciary duty by the trustees. *Cf. Reed v Burton,* 344 Mich 126, 132; 73 NW2d 333 (1955).

## CONCLUSION

We find that a probate court does have jurisdiction to determine and order the amounts of dividends to be paid by corporations in which the majority interests are owned by a corporation wholly owned by a testamentary trust. However, the facts presented herein do not support the exercise of such jurisdiction.

The decision of the Court of Appeals is reversed.

WILLIAMS, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with BOYLE, J.

KAVANAGH, J. I do not agree that a probate court has jurisdiction to determine and order the amounts of dividends to be paid by corporations in which interests—majority or otherwise—are owned by a corporation wholly owned by a testamentary trust.

Neither MCL 600.847; MSA 27A.847 nor its predecessor MCL 701.19(2); MSA 27.3178(19)(2) gives the probate court authority to order the payment of dividends. That legislation quite clearly addresses the *powers* of the probate court in the exercise of the jurisdiction vested in that court by law, and it does not purport nor should it be read to affect the extent of the court's jurisdiction.

The fact that a court of equity, finding a breach of duty owed by directors to the stockholders of a corporation, could properly order the payment of dividends to remedy that wrong as in *Dodge v Ford Motor Co,* 204 Mich 459; 170 NW 668 (1919), does not bear on the issue presented here.

The legislation cited above merely gives the probate court the plenary powers an equity court has in dealing with matters properly brought before the court.

Here, while the probate court has plenary powers in dealing with the administration of the trust and, in connection therewith, full authority to regulate the conduct of defendants as trustees, nowhere is it vouchsafed any authority over the defendants as directors of the corporations owned by the trust.

The probate judge's disavowal of authority to direct the payment of dividends and his order to the trustees as such to retain no more than 25% of corporate earnings is not only disingenuous, but legally ineffective. Trustees as such do not control corporate earnings, and they cannot therefore retain 25% or, indeed, any percentage thereof. Directors as such alone determine retention of corporate earnings. The circumstance that the same persons are at once directors and trustees does not add any jurisdiction to the probate court.

In a proper case, the probate court could remove the defendants from their offices as trustees or direct them as trustees to dispose of the stock in those corporations, but it may not order them as directors of corporations to declare dividends because it has no jurisdiction or supervisory authority over the relationship of directors to stockholders.

We would reverse the Court of Appeals and

remand to the probate court for further proceedings.

Levin and Ryan, JJ., concurred with Kavanagh, J.

Levin, J. The Court's decision that the evidence presented does not support the decision of the probate court makes it unnecessary to decide whether an action may be maintained in the probate court to instruct trustees to cause the declaration of increased dividends on corporate capital stock owned by the trustees and, if so, whether the standard that governs the conduct of directors is different where a majority of the capital stock is owned by a testamentary trust.

I agree with the majority that neither the evidence presented to the probate court nor the findings of the probate judge support a determination that excessive surplus has been accumulated by the operating companies. The observations in the opinion of the Court on the questions unnecessary to decision may, however, be read as representing the views of the entire Court unless a response is made.

I have signed Justice Kavanagh's opinion because I agree with him that neither the Revised Judicature Act nor the Revised Probate Code authorizes a probate court to instruct directors of a corporation how they shall discharge their responsibilities as directors although the directors may be trustees who are subject as trustees to instruction by the probate court. I write separately in response to the observations in the opinion of the Court concerning the standards that govern the conduct of trustees and directors.

Fiduciaries are frequently authorized to invest in, or to continue an investment in, capital stock

of a corporation. When fiduciaries are authorized to invest in capital stock and own sufficient stock to elect directors, even all the directors, and choose to elect themselves as directors, they do not seek to "insulate themselves from probate scrutiny under the guise of calling themselves corporate directors". Rather, they have exercised powers to incorporate or to continue an investment in capital stock of a corporation, and to vote the stock. The trustees would be acting "under a guise" only if they were not authorized to incorporate or so invest in capital stock.

In the instant case, the settlor authorized the trustees to continue an investment in the operating companies. Their continuation of the investment was authorized and valid, thus not a guise.

It is apparent from statements of the probate judge that in deciding how he would instruct the trustees-directors he would not be guided by the standard that governs directors, but rather by the standard that governs trustees. The opinion of the Court reviews decisions of this and other courts concerning the standards that govern the conduct of trustees and of directors and the powers of courts to review the exercise of discretion regarding investments and dividends, and recognizes that there is a potential for conflict between the duty owed by a trustee to the beneficiaries of a trust and the duty owed by a director to the stockholders of a corporation. The opinion of the Court states that "each case must be evaluated on its own facts with due consideration given to the settlor's intent" and that the settlor here "placed primary emphasis on the maintenance and continuance of the trust corpus". It concludes that there is not sufficient proof either to find that the trustees breached their fiduciary duty to beneficiaries

or to warrant interference with the judgment of corporate directors or the imposition of a "rigid dividend policy upon the trustees-directors".

The approach in the opinion of the Court leaves in doubt whether the trustee or director standard would govern in a particular case. Such uncertainty casts a cloud on the authority of trustees to exercise a power to incorporate or to invest or continue an investment in corporate stock.

The opinion of the Court, although noting that when trust principal is invested in corporate stock there is no income until a dividend is declared, leaves open the possibility that the judgment of directors regarding the needs of the business, which would ordinarily be sustained if the capital stock were not owned by a trust, may not be accorded the same deference where the capital stock is owned by a trust if the action of the directors is thought to conflict with the perceived intent of the settlor. This ignores that in authorizing investment and continuation of investment in corporate stock a settlor evidences his intent to empower the trustees to subject the principal of the trust to the needs of the business of the corporation as determined by the directors acting as directors of a corporation and not as trustees of a trust. See *In the Matter of Doelger Estate,* 254 App Div 178, 184; 4 NYS2d 334 (1938).

If the investment in corporate stock is valid, the directors elected by the stockholders, albeit also the trustees, are required by the statutes and rules of law governing corporations to act as directors, not as trustees. They are governed in their exercise of judgment as directors by a standard different from that which governs trustees in the exercise of their fiduciary obligations. The standard that governs the conduct of directors of a corporation does not depend on who owns its capital stock.

A probate court has, as Justice KAVANAGH notes, the power in a proper case to decide that an investment, even one authorized to be continued by the settlor, should be discontinued to preserve the estate. The court may on adequate evidence remove a trustee. It may in a proper case direct trustees in the voting of stock to prevent dissipation of the assets or abuse of voting power, but the probate court cannot properly instruct directors of a corporation how they shall discharge their responsibilities as directors, even if the directors are trustees owning a majority of the capital stock of the corporation. In all events, even if the probate court is empowered to so instruct, the standard that governs the exercise of discretion respecting the declaration of dividends does not vary depending on whether the directors were elected by the votes of stockholders who are trustees or by the votes of other stockholders.